## BAER v. COMMISSIONER OF INTERNAL REVENUE.

### No. 14507.

United States Court of Appeals
Eighth Circuit.

May 7, 1952.

Owen T. Armstrong, St. Louis, Mo. (Abraham Lowenhaupt, Ray Eder and Lowenhaupt, Waite, Chasnoff & Stolar, all of St. Louis, Mo., on the brief), for petitioner.

Harry Marselli, Sp. Asst. to Atty. Gen. (Ellis N. Slack, Acting Asst. Atty. Gen., and Lee A. Jackson and Louise Foster, Sp. Assts. to Atty. Gen., on the brief), for respondent.

Before GARDNER, Chief Judge, and WOODROUGH and THOMAS, Circuit Judges.

GARDNER, Chief Judge.

This matter is before us on petition to review a decision of the Tax Court which sustained a finding of deficiency in petitioner's income tax return for the year 1947 in the amount of $78,633.12. The deficiency resulted from disallowance of deductions from taxpayer's income of an item of $35,000 paid by taxpayer to his divorced wife pursuant to a property settlement, and an item of $20,000 paid to her attorney for legal fees in connection with the divorce proceedings, and an item of $16,500 paid to his own attorneys for legal fees in connection with the divorce proceedings. The findings of the Tax Court are not challenged and may be summarized as follows:

Petitioner, a resident of St. Louis, Missouri, was married to Mary E. Baer July 27, 1936. They had one child, Mary Ann Baer, who in 1946 was about nine years old. On December 14, 1946, Mrs. Baer filed suit for divorce and asked for alimony, custody and support of the minor child, and other relief. In that proceeding she alleged that her husband had property of several millions of dollars. While the suit for divorce was pending, on July 10, 1947, the parties executed an agreement settling their property rights and on the same date decree of divorce in favor of Mrs. Baer was entered. The agreement was incident to the divorce proceeding and divorce decree. It made provision for settlement of all the property rights of the parties, the details of which need not be here recited. It provided that in discharge of the legal obligations imposed upon petitioner because of the marital relationship he would pay his wife immediately after the entry of decree of divorce the lump sum of $35,000 to enable her to purchase and pay for a certain named property as a home for herself and daughter, and that he would pay her attorney the sum of $20,000 in full of any claim which might be made upon him for compensation for her attorney on account of services rendered to her, including all services in connection with the divorce suit and the suit involving stock claimed by her; that upon the entry of the decree of divorce he would on the first day of each month for five months pay her $2,916.66, and thereafter so long as both parties should live, irrespective of her remarriage, the sum of $1458.33, and that in the event of his death prior to that of Mary E. Baer, his representatives would pay to a responsible insurance company the sum necessary to provide for her $1,250 monthly for the rest of her life, and that immediately after the entry of the decree of divorce petitioner would deliver to Mary E. Baer the stock certificate for 5,000 shares of the stock of Stix, Baer and Fuller, and she would dismiss the suit involving said stock, he to keep the right to vote the stock, and she to restrict her right to sell or otherwise dispose of it.

The divorce decree was entered on July 10, 1947, and recited the appearance of the parties by attorneys; that plaintiff was found the innocent and injured party and entitled to relief, and that divorce was granted. The custody of the child was awarded in accordance with stipulation of the parties. The decree contained no reference to alimony, property, or settlement thereof.

On July 10, 1947, following the entry of the decree of divorce, and pursuant to the agreement, petitioner paid Mary E. Baer $35,000, and paid her attorneys $20,000.

The court found that, "Petitioner had two attorneys in the matter of the divorce and property settlement. To one of them he

paid $10,000 of which about 90 per cent was received for services rendered in connection with the form and amount of alimony to be paid to the wife. To the other attorney he paid $8,787.60 of which about 80 per cent was paid for services in the negotiation of the form and amount of alimony."

In his income tax return for 1947 petitioner reported income of $100,519.57 as salary from Stix, Baer and Fuller Company, and $9,223.55 income from a trust. His dividends from Stix, Baer and Fuller Company were in excess of $135,000. In 1947 petitioner was and still is president of Stix, Baer and Fuller Company and then owned and now owns a substantial amount of stock in that company.

Petitioner and his wife and their attorneys were negotiating from about September, 1946, until July 10, 1947, relative to the marital rights and obligations of petitioner and his wife. At first a reconciliation was attempted but appeared hopeless and thereafter most of the negotiations were directed to the financial aspects of the matter. Mrs. Baer initially asked for one-sixth of petitioner's gross estate which she estimated to amount to from $6,000,000 to $8,000,000. Most of petitioner's property consisted of securities, a substantial portion thereof being represented by stock of Stix, Baer and Fuller Company. Petitioner resisted his wife's efforts to obtain a gross settlement because he was extremely concerned about the posssibility of breaking up his solid block of stock in Stix, Baer and Fuller Company as it might affect his control and future in the business.

During the negotiations leading up to the property settlement there were discussions of the wife's demand for alimony, the dispute and replevin action as to the 5,000 shares of Stix, Baer and Fuller stock standing in the name of Mrs. Baer, a dispute as to some insurance which had been taken out on taxpayer's life by his wife and was being paid for out of the proceeds of a trust which he had created, problems as to the custody and support of the minor child, and attorney's fees for the wife. The attorneys for petitioner prepared documents in connection with those matters and represented petitioner in the divorce proceeding.

Based on these facts as found by the Tax Court the court considered the question whether the Commissioner erred in denying deduction of (1) $35,000 paid petitioner's wife for the purchase of a home, (2) the $20,000 paid to her attorney, and (3) the amount paid by the petitioner to his own attorneys.

As to the item of $35,000 paid to petitioner's wife for the purchase of a home, and the item of $20,000 paid to her attorney, the court expressed the view that these payments were not periodic payments of alimony deductible from gross income within the meaning of Section 23(u) of the Internal Revenue Code, 26 U.S.C.A. § 23(u), and hence, were not deductible from petitioner's income for income tax purposes. At to the item paid petitioner's attorneys in the divorce proceedings, the court held that this payment involved personal relationships as distinguished from business relationships, and hence, was not deductible under the provisions of Section 23(a)(2) of the Internal Revenue Code, for income tax purposes.

■ In this court petitioner renews his contentions, (1) that the amounts $35,000 and $20,000 paid by petitioner to Mrs. Baer and her attorney respectively, pursuant to the settlement agreement, were among periodic payments of alimony deductible from petitioner's gross income under Section 23(u) of the Internal Revenue Code; (2) that $16,500, representing that part of the aggregate amount of $18,787.60 in legal fees which is allocable to services in connection with the financial matters in controversy was deductible under Section 23(a)(u) of the Internal Revenue Code.

Section 22(k) of the Internal Revenue Code, so far as here material, provides that in case a wife is divorced or legally separated from her husband under a decree of divorce or separation, "periodic payments (whether or not made at regular intervals) received subsequent to such decree in discharge of * * * a legal obligation which, because of the marital or family relationship, is imposed upon or incurred by such husband under such decree or under a written instrument incident to such divorce or separation shall be includible in the gross

income of such wife, and such amounts received as are attributable to property so transferred shall not be includible in the gross income of such husband." The agreement entered into between petitioner and his wife for the settlement of all property rights growing out of their marital relationships and her rights to his personal property, sets out in separate paragraphs the amounts which petitioner agreed to pay in discharge of these obligations. In paragraph 2(a) of the agreement it is provided that petitioner shall pay to his wife "immediately after the entry of such decree of divorce, a lump sum of Thirty-five Thousand Dollars ($35,000.00), so that she may be able to purchase and pay for the property known as 600 West Polo Drive, Clayton, Missouri, * * *." It is earnestly contended that this payment was a "periodic" payment of alimony and hence deductible from petitioner's gross income. First, it is noted that it was payable and actually paid in a lump sum for a specifically designated purpose, and while it is contended that it was the purpose of petitioner's counsel to classify this as a periodic payment, it is notable that counsel for Mrs. Baer insisted that the words "a lump sum" be inserted in this provision for the payment of $35,000, indicating that he was not in accord with the purpose of counsel for petitioner to make this payment part of a single unified plan for discharging petitioner's obligation of support. This lump sum payment had none of the characteristics of a periodic payment. The agreement provided for other payments to be made monthly. These certainly are not in the same category with the lump sum payments.

What has been said with reference to this lump sum payment is equally applicable to the payment of the lump sum of $20,000 to Mrs. Baer's attorney. That payment could scarcely be called alimony and was paid for a definite purpose, wholly differing from the monthly payments provided for. In Norton v. Commissioner of Internal Revenue, 8 Cir., 192 F.2d 960, 962, we considered a somewhat similar situation and in the course of that opinion, referring to lump sum payments in a property settlement, we said: "We think they are separate and distinct obligations. The $5,000 obligation was payable forthwith, while the $200 per month obligation was to be satisfied by 'periodic payments.' The statute manifestly was not intended to cover all payments but 'periodic payments,' and we do not think the $5,000 lump sum payment can under the circumstances here disclosed be recognized as 'periodic payments,' as that term is used in the statute." We conclude that petitioner was not entitled for income tax purposes to deduct from his gross income these lump sum payments.

It remains to consider the contention that the attorney fees paid by petitioner to his own attorneys, to the extent that they were allocable to services in connection with financial matters in controversy as distinguished from his divorce controversy, are deductible under Section 23(a) (2) of the Internal Revenue Code. Section 23(a) (2) provides that in computing net income there shall be allowed as deductions "In the case of an individual, all the ordinary and necessary expenses paid or incurred during the taxable year for the production or collection of income, or for the management, conservation, or maintenance of property held for the production of income."

It was claimed by counsel for Mrs. Baer that petitioner's estate exceeded in value $6,000,000, and she made demand for payment in excess of $1,000,000 in a lump sum. His estate consisted largely of stock of the Stix, Baer and Fuller Company and his income came mainly from the salary paid him by that company as its president and dividends received by him from that company. It was of very great importance to him to maintain in specie his stock in this company so as to retain control, which may well have meant his salary and to a certain extent the earnings of the company. The demand for $1,000,000 in a lump sum could not have been met by him without a sale of a very considerable amount of his stock in this company. It was, of course, conceded that if Mrs. Baer were granted a divorce she would be entitled to a very large sum in alimony. The controversy did not go to the question of the liability but to the manner in which it might be met by the

petitioner without greatly disturbing his financial structure. It was of the utmost importance to him to maintain his control of the company and thus his stock therein which was a producer of income, and his position as president; in fact, in the circumstances here disclosed this stock had a peculiar or special value to petitioner. Payment of the $1,000,000 demand in a lump sum threatened a destruction, to a considerable extent, of his capacity to earn income. Among other controversies was the claim of Mrs. Baer to 5,000 shares of stock in the Stix, Baer and Fuller Company. It was through the efforts of Mr. Baer's attorneys that while this stock was turned over to Mrs. Baer, voting power of it was permanently fixed in petitioner and her right of disposing of the stock was left largely in his control, thus further protecting him in the control of the company, and it was through their efforts that the plan was worked out by which he was placed in the position to meet these obligations and yet remain in control of the company and his stock therein. In so doing they were, we think, conserving and maintaining property held by Baer for the production of income.

It was early determined that reconciliation between petitioner and his wife was not possible and he had little concern as to the divorce proceeding; in fact, he interposed no answer. There was apparently but little occasion for the services of counsel in the divorce proceeding proper. That the services of petitioner's counsel were largely so devoted was recognized by the Tax Court in its finding that to one of these attorneys he paid $10,000, of which about 90 per cent was received for services rendered in connection with the form and amount of alimony to be paid to the wife and that to the other attorney he paid $8,787.60, of which about 80 per cent was paid for services in the negotiations as to form and amount of alimony. The amount devoted to the latter named purpose amounts in the aggregate to $16,500. The services of these attorneys were certainly appropriate, and hence, the payments were necessary, and if for the conservation or maintenance of property held for the production of income, then they were deductible from his gross income.

Prior to 1942, Section 23 permitted a deduction for "ordinary and necessary expenses paid or incurred during the taxable year *in carrying on any trade or business*." It made no provision for nonbusiness expenditures. The Supreme Court, in Higgins v. Commissioner, 312 U.S. 212, 61 S.Ct. 475, 85 L.Ed. 783, held that expenses incurred by a taxpayer in looking after his income-producing property were not deductible because not incurred in carrying on any trade or business. As a result of this decision Congress added the provision 23(a)(2), above quoted. The legislative intent in enacting this Section 23(a)(2), if that may be said to be obscure, is disclosed in the report of the House Ways and Means Committee, H.Rpt. No. 2333, 77th Congress, 1st Session, 1942–2 C.B. 373, from which we quote as follows:

"The existing law allows taxpayers to deduct expenses incurred in connection with a trade or business. Due partly to the inadequacy of the statute and partly to court decisions, non-trade or non-business expenses are not deductible, although non-trade or non-business income is fully subject to tax. The bill corrects this inequity by allowing all of the ordinary and necessary expenses paid or incurred for the production or collection of income or for the management, conservation, or maintenance of property held for the production of income."

Following this change in the law, the Supreme Court, in Trust of Bingham v. Commissioner, 325 U.S. 365, 65 S.Ct. 1232, 1235, 89 L.Ed. 1670, held that attorney fees paid by the trustee in contesting an income tax deficiency assessment and in winding up the trust after its expiration were deductible under Section 23(a)(2) of the Internal Revenue Code. In the course of the opinion in that case, referring to the decision of the Court of Appeals in the same case [Cir., 145 F.2d 568] it is said:

"It (the Court of Appeals) thought that the expenses of contesting the income tax had nothing to do with the production of income and hence were not deductible as expenses 'for the production of income' within the mean-

ing of the statute. The court also thought that these expenses were not deductible, because they were paid in connection with property held by the trustees 'ready for distribution', and hence not 'for the production of income.' Similarly it held that the fees for professional services rendered in connection with the payment of legacies and the distribution of the trust fund, were not expenses relating to the management of property held for the production of income, since they were rendered after the trust term had expired and when the property was ready for distribution. * * *

"We think that these objections to the deductions fail to take proper account of the plain language of § 23(a) (2), and the purpose of the section as disclosed by its statutory setting and legislative history; * * *.

"Here the decision of the Court of Appeals was that the expenses were not deductible because they were not for the purpose of producing income or capital gain, and because the trust property, being ready for distribution, was no longer held for the production of income."

After holding that the expenses connected with the devolution of the trust property were deductible, the court said:

"What we have said applies with equal force to the expenses of contesting the tax deficiency. Section 23(a) (2) does not restrict deductions to those litigation expenses which alone produce income. On the contrary, by its terms and in analogy with the rule under § 23(a)(1), the business expense section, the trust, a taxable entity like a business, may deduct litigation expenses when they are directly connected with or proximately result from the enterprise—the management of property held for production of income."

Here the services, to the extent found by the Tax Court, were not to prevent the payment of the liability due Mrs. Baer but to so adjust the method of satisfying that liability as not unnecessarily to reduce petitioner's income from the property which confessedly he owned, and hence it was for the purpose of conserving and maintaining this income-producing property. This property was held by him for the production of income. In 1947, the year here involved, he received in excess of $135,000 in dividends and over $100,000 in salary from Stix, Baer and Fuller Company. If the claim for over $1,000,000 of ·petitioner's property were required to be paid in a lump sum, it would have forced petitioner to relinquish control of the source of his income.

It is, however, urged that the deductions were not allowable because Section 24(a) (1) of the Internal Revenue Code, 26 U.S.C.A. § 24(a)(1), denies deduction for "personal, living, or family expenses". The mere fact that the same attorneys acted for petitioner in connection with his domestic controversy does not convert the services rendered by them in the matter of the negotiation of the agreement by which the liability to Mrs. Baer for property was so adjusted as to conserve and protect Mr. Baer's specific holdings in Stix, Baer and Fuller Company to personal living or family expenses of Mr. Baer. The Tax Court recognized the two classes of service. This expenditure had a proximate and direct relation to the conservation and maintenance of specific property, the ownership or control of which enabled petitioner to receive income. These fees did not constitute personal family expenses. LeMond, 13 T.C. 670; Gale, 13 T.C. 661. In the LeMond case the facts were somewhat similar to the instant case. In the course of the opinion in that case the Tax Court said:

"* * * the record indicates that the petitioner and her husband had actually separated by mutual agreement prior to negotiation of the separation agreement of July 27, 1943, and that the attorneys to whom the fees in question were paid were solely concerned with the financial aspects of the separation, rather than with the settlement of the personal or marital difficulties of the petitioner and· her husband. Therefore, it is our opinion that no part of the legal expenses herein constituted personal family expenses and that no

allocation of the legal fees in that respect is necessary."

The case of Howard, 16 T.C. 157, is cited as authority for the holding that the expense for the attorney fees there involved was a personal living or family expense. In that case it is to be observed that "The litigation * * * was in no wise related to petitioner's business activity. The whole situation involved personal (as distinguished from business) relationships and personal considerations. * * * Throughout the entire history and development of income tax law there has existed a sharply defined distinction between business expenses allowable as deductions and nonallowable personal expenses." The Howard case is readily distinguishable from the instant case. The question involved in this case was whether Mrs. Baer might enforce her demand for alimony in a lump sum sufficient in amount to cause a break-up of petitioner's stockholdings. The negotiations looking to the prevention of this threat had to do, we think, with the conservation and maintenance of income-producing property owned by the petitioner.

The government now relies quite strongly on the decision of the Supreme Court in Lykes v. United States, 343 U.S. 118, 72 S.Ct. 585, 586, handed down since the submission of the instant case. In that case Lykes "gave to his wife and to each of his three children, respectively, 250 shares of common stock in Lykes Brothers, Inc., a closely held family corporation." In his Federal gift tax returns he valued the shares at $120.00 each and on that basis paid a gift tax. The Commissioner, however, revalued the stock and notified Lykes of a gift tax deficiency in a large sum. Lykes employed attorneys to contest this increase in the gift tax and ultimately secured a settlement for somewhat less than the amount claimed. In his current income tax return he made no claim for deduction on account of attorney fees which he had paid counsel but later claimed a tax refund on the ground that the attorney fees should have been deducted under Section 23(a)(2) of the Internal Revenue Code. The claim was denied, whereupon suit was brought in the District Court and the matter in due course reached the Supreme Court. In the course of the opinion the court, among other things, said:

"Insofar as gifts to members of a donor's family are in the nature of personal or family expenses, the donor's expenditures for accounting, legal or other services incurred in making those gifts are of a like nature. The nondeductibility of such expenditures, therefore, is indicated both by the absence of any affirmative allowance of their deductibility under § 23 and by the express denial of the deductibility of all personal or family expenses under § 24. * * *

"Inasmuch as the ordinary and necessary character of the legal expenses incurred in the instant case is not questioned, their deductibility turns wholly upon the nature of the activities to which they relate. The first issue, therefore, is whether petitioner's gifts, and the legal expenses related to them, were made for the 'production or collection of income' within the meaning of § 23(a)(2). Generally a gift is the antithesis of such production or collection because it reduces the donor's resources whether income producing or not. However, petitioner suggests that although he stated in his gift tax return that the purpose of his gifts was to express his love for the donees, yet the gifts were part of a general plan to produce income for himself. In support of this, he points out that the gifts consisted of 1,000 shares of stock in a closely held family corporation of which he is the president and in which he retained personal ownership of about 2,000 like shares, and that one of the donees, his son, is now actively identified with the corporation and is one of its directors."

In the Lykes case the court in affirming the decision of the Court of Appeals, 5 Cir., 188 F.2d 964, held that the transfers were gifts and that the attorney fees were not proximately related to the production of income. The services in that case were relative to property which the taxpayer had given away, and, as pointed out by the

court, thereby reduced, rather than conserved, the property held by him for income-producing purposes. The activities of the attorneys in the instant case, on the other hand, were directed to the conservation and maintenance of property held by their client for income producing purposes. The facts in the Lykes case are so unlike those in the case at bar as to rob it of any persuasive force. Lykes made gifts to members of his family—clearly a family transaction which had nothing to do with the conservation or maintenance of specific property held by him for income producing purposes.

We conclude that petitioner was entitled to deduct from his gross income the sum of $16,500 paid to his attorneys as an expense incurred to conserve and maintain income-producing property owned by him. The judgment of the Tax Court is therefore modified and the cause remanded to that court for further proceedings consistent herewith.

WOODROUGH, Circuit Judge (dissenting in part).

I agree with the majority conclusion affirming decision of the Tax Court that the taxpayer's lump sum payment of $35,000 to his divorced wife and of $20,000 to her attorney did not constitute periodic payments of alimony, within Section 22(k) of the Internal Revenue Code, 26 U.S.C.A. § 22(k) and were not deductible.

But I am unable to agree that the taxpayer's payments to his own attorneys for the services which they performed for him in negotiating and working out the compromise settlement of his family problems, including divorce and provisions for his wife and daughter, were deductible. I think the attorneys worked to minimize "personal, living or family expenses" of the taxpayer and did nothing in the "production or collection of income" or in the "management, conservation, or maintenance of property".

It seems to me that the decision here has gone counter to the decision handed down by the Supreme Court in Lykes v. United States, 343 U.S. 118, 72 S.Ct. 585. There attorneys' fees sought to be deducted under Section 23(a) (2) were paid to attorneys who worked to minimize expense to the taxpayer incidental to certain gifts made by him. Gifts are the antithesis of "production of income" or "conservation of property" and because the services were attributable to the gifts, the cost of the attorneys' services was held not to be deductible.

This case should turn on the same principle. The attorneys' services here were to minimize the cost to the taxpayer of the settlement of his family difficulties. Therefore the matter to which the fees were attributable was as far removed from "production of income" or "conservation of property" as was the making of gifts in the Lykes case. But it is the matter to which the services are attributable that controls and I think the decision in the Lykes case clearly admonishes against sanctioning deduction under Section 23(a)(2) in this case.