JAMES C. SENTER AND SUSAN B. SENTER, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

ANTHONY FOSTER MCKISSICK, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 56468, 56604. Filed March 12, 1956.

*Thomas A. Wofford, Esq.*, for the petitioners in Docket No. 56468.
*F. T. Miller, Jr., Esq.*, for the petitioner in Docket No. 56604.
*Raymond Whiteaker, Esq.*, for the respondent.

#### OPINION.

ARUNDELL, *Judge:* These cases involve income tax deficiencies for the calendar year 1949 of $18,251.34 in the case of petitioners James C. Senter and Susan B. Senter and $26,773.29 in the case of petitioner Anthony Foster McKissick. The issues involved in the first case are whether the amounts of $2,221.03 and $4,774.06 received from two trust estates by Susan B. McKissick (now Senter) on January 5 and April 5, 1949, respectively, and an amount of $43,485.27 received by her on November 15, 1949, from Anthony Foster McKissick constituted alimony income in the year 1949 under section 22 (k)[1] of the Internal Revenue Code of 1939. The issue involved in the second case is whether petitioner McKissick is entitled to a deduction in the year 1949 under section 23 (u)[2] of the 1939 Code of the amount of

---

[1] SEC. 22. GROSS INCOME.

(k) ALIMONY, ETC., INCOME.—In the case of a wife who is divorced or legally separated from her husband under a decree of divorce or of separate maintenance, periodic payments (whether or not made at regular intervals) received subsequent to such decree in discharge of, or attributable to property transferred (in trust or otherwise) in discharge of, a legal obligation which, because of the marital or family relationship, is imposed upon or incurred by such husband under such decree or under a written instrument incident to such divorce or separation shall be includible in the gross income of such wife, and such amounts received as are attributable to property so transferred shall not be includible in the gross income of such husband. * * * Installment payments discharging a part of an obligation the principal sum of which is, in terms of money or property, specified in the decree or instrument shall not be considered periodic payments for the purposes of this subsection; except that an installment payment shall be considered a periodic payment for the purposes of this subsection if such principal sum, by the terms of the decree or instrument, may be or is to be paid within a period ending more than 10 years from the date of such decree or instrument * * *.

[2] SEC. 23. DEDUCTIONS FROM GROSS INCOME.

In computing net income there shall be allowed as deductions:
* * * * * * *
(u) ALIMONY, ETC., PAYMENTS.—In the case of a husband described in section 22 (k), amounts includible under section 22 (k) in the gross income of his wife, payment of which is made within the husband's taxable year. If the amount of any such payment is, under

$43,485.27 for alleged alimony paid on November 15, 1949, to his former wife, Susan B. Senter. Certain other minor adjustments of net income were made by the respondent in both cases which are not at issue. The cases were consolidated for trial except that separate briefs were to be filed by petitioners.

The facts have all been stipulated and are briefly summarized below.

Petitioners James C. Senter and Susan B. Senter are individuals and are husband and wife, residing in Albemarle, North Carolina. They filed a joint income tax return for 1949 with the then collector of internal revenue for the district of North Carolina. Susan B. Senter also filed a separate individual income tax return for the same year with the then collector of internal revenue for the district of South Carolina.

Petitioner McKissick is an individual residing in Easley, South Carolina. He filed an individual income tax return for the year 1949 with the then collector of internal revenue for the district of South Carolina.

In 1946 petitioner McKissick, hereinafter sometimes referred to as "husband" [3] and Susan Ballinger (now Senter), hereinafter sometimes referred to as "wife," were married in Spartanburg County, South Carolina. One child, Anthony Foster McKissick, Jr., was born of this marriage on February 2, 1948.

During the year 1948, differences developed between the husband and wife, as a result of which the parties lived separate and apart from each other. On August 6, 1948, the wife instituted an action in the Court of Common Pleas for Greenville County, South Carolina, against the husband for temporary alimony, counsel fees, a decree of legal separation, and for custody of their minor son, as well as for permanent maintenance and support for herself and minor child.

On August 23, 1948, prior to a hearing on the action filed August 6, 1948, the husband and wife entered into a written separation agreement. Covenants 3 (a) and (e) of this agreement are as follows:

3. (a) For the maintenance and support of the said Susan B. McKissick and for the maintenance, support, education, and care of the said Anthony F. McKissick, Jr., the said Anthony F. McKissick hereby sells, assigns, and transfers unto the said Susan B. McKissick and she is hereby entitled to receive, demand, collect and use for her own proper purposes, one-third (⅓) of the amount of all rents, issues and income that may become due to the said Anthony F. McKissick under the last will and testament of his grandfather, Anthony Foster McKissick, deceased, and also under the last will and testament of his grandmother, Margaret Smyth McKissick, deceased. It is the intent of the parties that said Susan B. McKissick shall receive one-third (⅓) of any and all payments to which the said Anothony F. McKissick might be entitled from either or both of said estates.

\*     \*     \*     \*     \*     \*     \*

section 22 (k) or section 171, stated to be not includible in such husband's gross income, no deduction shall be allowed with respect to such payment under this subsection.

[3] For the statutory definition of husband and wife see section 3797 (a) (17), Internal Revenue Code of 1939.

(e) It is understood and agreed that the said payment of One-third (⅓) of said rents, issues and income shall cease and determine if and when the said Susan B. McKissick obtains a valid divorce and remarries. If she does secure a valid divorce and remarries, the said Anthony F. McKissick agrees to pay her in cash a sum equal to the total amount which the said Susan B. McKissick has received or become entitled to receive from the aforesaid estates under this contract and agreement for the preceding three (3) years prior to the obtaining of such divorce and remarriage. In the event that the said Susan B. McKissick should obtain a valid divorce and remarry before she has received or become entitled to receive three (3) successive annual payments from said estates, the said Anthony F. McKissick agrees to pay her in cash a sum equal to three (3) times the average annual payments which the said Susan B. McKissick has received or has become entitled to receive from said two estates.

On the same day that the above-mentioned agreement was signed, the Court of Common Pleas for Greenville County, South Carolina, entered a decree of legal separation and separate maintenance incorporating therein the said agreement and making it incident thereto.

Beginning with the date of and pursuant to the decree of legal separation and separate maintenance and the agreement incident thereto, the following payments were made to the wife:

| Date | From | Amount |
|---|---|---|
| Aug. 23, 1948 | A. F. McKissick Estate | $7, 500. 00 |
| Jan. 5, 1949 | A. F. McKissick Estate | 2, 221. 03 |
| Apr. 5, 1949 | M. S. McKissick Estate | 4, 774. 06 |

On June 29, 1949, the wife filed a bill of complaint asking for a legal divorce from the husband in a proceeding brought in the Court of Common Pleas, Greenville, South Carolina. The final decree of divorce was granted on October 15, 1949. The decree specifically incorporated therein the agreement dated August 23, 1948, as incident thereto.

On November 15, 1949, the wife was married to James C. Senter. On the same day, petitioner McKissick made a final cash payment to his former wife in accordance with the above-mentioned contract and agreement dated August 23, 1948, in the amount of $43,485.27, no part of which amount was included in either the separate return filed by the wife or the joint return filed by James C. and Susan B. Senter for the year 1949. Petitioner McKissick on his return for the year 1949 claimed $43,485.27 as a deduction for alimony.

On November 26, 1949, the wife executed a release in which she released her former husband and the trustees of the two trust estates from any and all liability by reason of the separation agreement dated August 23, 1948.

In the separate individual income tax return for the year 1949 filed by Susan B. McKissick Senter on January 16, 1950, she reported as alimony income the total amount of $6,995.09 ($2,221.03 plus $4,774.06) on which a tax of $858.69 was paid.

The respondent in his determinations of the deficiencies disallowed the deduction of $43,485.27 claimed by the husband; increased the income reported by petitioner James C. and Susan B. Senter in the total amount of $50,480.36 as representing "Alimony income" received by the wife from her former husband in the respective separate amounts of $2,221.03, $4,774.06 and $43,485.27; and did not allow petitioners James C. and Susan B. Senter any credit for the $858.69 paid by the wife in connection with the separate return filed by her for the year 1949.

Petitioner McKissick did not claim any deduction in his 1949 return, nor does he claim any deduction now, for the payments of $2,221.03 and $4,774.06 received on January 5 and April 5, 1949, respectively, by his legally separated wife from the two estates of his grandparents. Both he and his former wife regarded such payments as periodic payments includible in the gross income of the wife under sections 22 (k) and 171 (a) of the 1939 Code.[4] We do not understand that petitioners James C. Senter and Susan B. Senter object to the inclusion as income in their joint return of the two amounts of $2,221.03 and $4,774.06 providing that a credit be given in some manner for the $858.69 of tax which Susan paid in connection with the separate return which she filed, and we understand from the respondent's brief that this will be done.

The main question in these cases is who pays the tax on the $43,-485.27. Petitioner McKissick contends that the payment of $43,485.27 on November 15, 1949, was simply the fourth and last of the periodic payments called for by the decree of legal separation and the agreement incident thereto and, as such, constituted income to the divorced wife under section 22 (k) and a deduction to him under section 23 (u). It should be noted in this connection that the payment of $43,485.27 was not made under the decree of legal separation but as a result of the divorce decree. Although the respondent in his determinations of deficiencies disallowed the deduction claimed by petitioner McKissick and at the same time included the $43,485.27 in the joint income of petitioners James C. Senter and Susan B. Senter, he now concedes that if this Court holds that petitioner McKissick is not entitled to the deduction, then petitioners James C. Senter and Susan B. Senter should not be required to include the amount in their joint income.

---

[4] For section 22 (k), see Footnote 1.

SEC. 171. INCOME OF AN ESTATE OR TRUST IN CASE OF DIVORCE, ETC..

(a) INCLUSION IN GROSS INCOME.—There shall be included in the gross income of a wife who is divorced or legally separated under a decree of divorce or of separate maintenance the amount of the income of any trust which such wife is entitled to receive and which, except for the provisions of this section, would be includible in the gross income of her husband, and such amount shall not, despite section 166, section 167, or any other provision of this chapter, be includible in the gross income of such husband.

It is our opinion that petitioner McKissick is not entitled to the deduction. The payment of $43,485.27 was of an entirely different category from the first three payments. The first three payments were made under covenant 3 (a) of the August 23, 1948, agreement incident to the decree of legal separation and separate maintenance and before the divorce and remarriage. The payment of $43,485.27 was made under covenant 3 (e) of the August 23, 1948, agreement incident to the divorce decree and after the divorce and remarriage. The legal effects of the two classes of payment are quite different as indicated below.

The first three payments made under covenant 3 (a) were for the maintenance and support of the separated wife and for the maintenance, support, education, and care of the minor child. They were to be paid from the estates of the husband's grandparents and under covenant 3 (c) were to be made at the time payments from such estates were to be made to the husband but in any event at least once each year. As previously indicated herein, the parties agree that they were clearly periodic payments and were includible in the wife's income under section 22 (k), *supra*. Under the specific provisions of sections 22 (k) and 171 (a), *supra*, such payments were not includible in the gross income of the husband, and the husband was precluded from taking any deduction for such payments under the second sentence of section 23 (u), *supra*.

The payment of $43,485.27 made under covenant 3 (e) was an entirely different kind of payment. Under that covenant, it was understood and agreed that the payments previously provided for from the estates of the husband's grandparents "shall cease and determine if and when the said Susan B. McKissick obtains a valid divorce and remarries." The wife did both; she obtained a valid divorce and she remarried. Therefore, under covenant 3 (e), her former husband became obligated to pay her "in cash a sum" to be determined by means of the last sentence in covenant 3 (e). The parties agreed that the amount so determined was the amount of $43,485.27, and this "sum," which in covenant 3 (f) of the agreement of August 23, 1948, was also referred to as "cash settlement," was paid to the wife by her former husband on November 15, 1949. Petitioner McKissick contends that this was a continuation of the periodic payments except that it was not payable out of the trust estates; that it was the final and last periodic payment; that it was includible in the gross income of the wife under the first sentence of section 22 (k), *supra;* and allowable as a deduction to the husband under the first sentence of section 23 (u), *supra*. We do not agree with this contention.

In *Ralph Norton*, 16 T. C. 1216, affd. (C. A. 8) 192 F. 2d 960, the husband, while a divorce proceeding was pending, agreed in

writing, which was entitled "Stipulation," to pay his wife $200 a month as alimony, and that "in addition to said monthly or periodic alimony" he would pay her forthwith $5,000 "additional alimony." The divorce decree allowed the wife alimony in the sum of $200 a month but did not specifically refer to the $5,000 except to recite "Stipulation filed as of May 7th, 1946." In holding that the husband could not deduct the $5,000 paid to the wife the day after the divorce, under section 23 (u), *supra*, we said:

The word "periodic" is to be taken in its ordinary meaning and so considered excludes a payment not to be made at fixed intervals but in a lump sum * * *. We consider it reasonable to believe that Congress * * * did not intend to make the wife taxable upon the lump sum * * * but that it was something in the nature of division of capital, rather than from the husband's income so as to be deductible by him. At any rate, we think Congress failed to provide that such a payment was "periodic" and that, therefore, it is not within the statute.

Later, in the course of our opinion in the *Norton* case, we concluded with the statement that:

we consider it clear that the $5,000 was not so in the same class or category as the periodic payments, of $200 a month, as to be considered one of such periodic payments though in different amount.

To the same effect is our decision in *Arthur B. Baer*, 16 T. C. 1418, affirmed on this issue by C. A. 8, 196 F. 2d 646. In the *Baer* case, the husband, in an agreement made incident to a decree of divorce, agreed to pay his wife $35,000 to be used in purchasing a home for her and their daughter, an additional $20,000 to be used in paying her attorneys' fees in the divorce proceeding, and certain monthly payments throughout the lifetime of the parties. All of these payments were made by the husband after the divorce decree was entered. He contended that they were all periodic payments includible in the income of the wife and allowable as deductions by him. Based upon our decision in the *Norton* case, we held that the payments of $35,000 and $20,000 were not "periodic payments" as that term is used in the statute. In affirming our decision, the Eighth Circuit said in part:

This lump sum payment had none of the characteristics of a periodic payment. The agreement provided for other payments to be made monthly. These certainly are not in the same category with the lump sum payments.

See also *William M. Haag*, 17 T. C. 55; and *Jean Cattier*, 17 T. C. 1461. In the latter case, a married couple, on October 31, 1940, entered into a written separation agreement which later was made incident to a divorce decree. Under paragraph Eighth of the agreement, the husband agreed to pay the wife "for her support and maintenance so long as she shall live or until she shall marry" at least $400 and not more than $1,250 per month. Under paragraph Thirteenth, the agreement provided "In the event the Wife remarries,

the Husband agrees to pay to the Wife the sum of \* \* \* $6,000 \* \* \* in equal quarterly instalments \* \* \* and from and after such marriage the Husband shall not thereafter be liable for the monthly payments provided for in paragraph 'EIGHTH' hereof \* \* \*." On February 11, 1945, the wife remarried and the husband paid the $6,000 during 1945. In holding "that the payments made by the petitioner in accordance with paragraph 'THIRTEENTH' of the agreement incident to the divorce decree were not periodic payments" we said in part:

We believe the payments required in paragraph "THIRTEENTH" were not, as petitioner contends, merely the terminal payments of a series of payments for support and maintenance of the divorced wife. The agreement plainly states that his liability to pay for her support and maintenance ceased upon her remarriage. The requirement that he was to pay her $6,000 was contained in a separate paragraph from that which required the payments for her support and maintenance \* \* \*

In the instant case, under covenant 3 (a) the wife was to receive periodically one-third the income from two trust estates. Under covenant 3 (e), these payments were to cease and determine if and when the wife obtained a valid divorce and remarried. If the latter happened, the husband was to pay her "in cash a sum" which in covenant 3 (f) was called a "cash settlement." The wife obtained a valid divorce, remarried, and the husband paid her a final cash-settlement payment of $43,485.27 and obtained from the wife a written release, releasing him and the two trust estates from any further payments or claims of any kind whatsoever. We hold that the payment of the $43,485.27 was not a "periodic" payment for the purposes of section 22 (k), *supra*. *Ralph Norton*, *supra; Arthur B. Baer*, *supra;* cf. *William M. Haag*, and *Jean Cattier*, both *supra*.

It follows that the respondent erred in including the amount of $43,485.27 in the joint gross income of petitioners James C. Senter and Susan B. Senter for the year 1949, and that he was correct in disallowing the deduction of the same amount claimed by petitioner McKissick in his income tax return for the same year.

*Decisions will be entered under Rule 50.*