*Decisions will be entered under Rule 50.*

CHARLOTTE M. DOUGLAS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 64357. Filed November 30, 1959.

*Charles H. Chase, Esq.,* for the petitioner.

*R. E. Maiden, Jr., Esq.,* and *Jack E. Roberts, Esq.,* for the respondent.

FORRESTER, *Judge:* The Commissioner has determined a deficiency in the income tax of the petitioner for the year 1953 in the amount of $7,997.58. The sole issue is whether respondent erred in disallowing $12,000 of a deduction in the amount of $15,175 claimed under section 23(a)(2) of the Internal Revenue Code of 1939.[1]

FINDINGS OF FACT.

The stipulated facts are so found.

Petitioner is an unmarried woman residing in Los Angeles, California. She filed her individual income tax return for the calendar year 1953 with the director of internal revenue at Los Angeles.

From June 5, 1916, to March 2, 1953, petitioner was married to Donald W. Douglas (hereinafter called Douglas). Sometime in October 1951, Douglas retained legal counsel for the purpose of obtaining a divorce from petitioner. Negotiations culminated in a proposed settlement agreement in July 1952, which petitioner's counsel informed her was the best he could do. Petitioner was not satisfied, and refused to sign it.

Shortly thereafter, Douglas' counsel commenced an action for divorce, alleging cruelty. Petitioner filed a cross complaint, seeking separate maintenance and alleging adultery.

Subsequently, and in or about January of 1953, petitioner employed new counsel, her principal purpose being to obtain a more satisfactory property settlement. Her new counsel computed the time remaining until trial, and allocated the first half of that period

---

[1] SEC. 23. DEDUCTIONS FROM GROSS INCOME.

In computing net income there shall be allowed as deductions:

(a) EXPENSES.—

    \*        \*        \*        \*        \*        \*        \*

(2) NON-TRADE OR NON-BUSINESS EXPENSES.—In the case of an individual, all the ordinary and necessary expenses paid or incurred during the taxable year for the production or collection of income, or for the management, conservation, or maintenance of property held for the production of income.

to the working out of a property settlement agreement, failing which he would devote the remaining time to preparation for trial.

New negotiations commenced, and on or about February 12, 1953, petitioner and Douglas entered into a new property settlement agreement, which had several features superior from petitioner's point of view to the old rejected offer, including the following:

(a) Under the previous offer, petitioner would have received 15 per cent of the "salary which Husband receives for his personal services." The agreement as entered, after repeating the above words, provided further that "salary" shall include "retirement pay or pensions."

(b) The agreement as signed adjusted in petitioner's favor the treatment of certain oil rights.

(c) Certain valuable stock options had been granted to Douglas by Douglas Aircraft Company, of which he was president, but were later withdrawn when their legality became doubtful. Nothing was done with regard to these options in the negotiations leading to the earlier rejected offer. Petitioner's new counsel, upon ascertaining the facts, insisted that should the options be reissued, petitioner must have an equal share therein. Douglas strenuously resisted this demand, but finally consented, and this matter was taken care of by a separate instrument. The options were eventually renewed, and petitioner realized a benefit therefrom of approximately $1,000,000.

(d) Douglas agreed to leave his entire estate, except for $90,000, to his and petitioner's five children.

Thereafter petitioner dismissed her suit for separate maintenance, filed a suit seeking divorce on the ground of cruelty, and on March 2, 1953, received an interlocutory decree in the Superior Court of Los Angeles County, California. The decree incorporated the settlement agreement together with the supplemental agreement respecting stock options. Petitioner paid legal fees in the amount of $20,000, of which her attorney allocated $15,000 to the property settlement and the remaining $5,000 to the divorce decree.

Under the agreement, petitioner received as her sole and separate property assets having a value of $897,059.71, substantially all of which had formerly been community property. Included therein were a residence, automobile, and other personal effects having a total value of $108,250, and cash and cash value of life insurance policies in the amount of $162,828.96. The remaining items, with an aggregate value of $625,980.75, consisted of income-producing property.[2]

Petitioner deducted $15,175 on her 1953 income tax return, consisting of the foregoing $15,000 and $175 in accounting fees. In

---

[2] These figures do not include any values for periodic alimony or petitioner's right to share in any renewal of the stock options.

the notice of deficiency, respondent allowed a deduction in the amount of $3,175, and disallowed the remaining $12,000.

Petitioner's income as reported by her for the calendar years 1954 to 1957, inclusive, was as follows:

| | 1954 | 1955 | 1956 | 1957 |
|---|---|---|---|---|
| Dividends | $45, 435. 75 | $42, 737. 50 | $43, 125. 31 | $42, 123. 42 |
| Interest | 5, 285. 67 | 2, 778. 62 | 2, 739. 01 | 4, 991. 92 |
| Capital gain (or loss) | (53. 39) | 27, 470. 85 | (672. 28) | (1, 000. 00) |
| Royalty | 507. 93 | 481. 63 | 393. 64 | 389. 73 |
| Rent | | | 81. 71 | 303. 08 |
| Alimony | 23, 808. 75 | 24, 379. 21 | 24, 610. 91 | 24, 281. 51 |
| Trust | | | 3, 304. 80 | |
| Adjusted gross income | 74, 984. 71 | 97, 847. 81 | 73, 583. 10 | 71, 089. 66 |

The above items of dividends, interest, capital gain and loss, royalties, and trust income arose from property coming into petitioner's possession pursuant to the settlement agreement. The alimony item was also received pursuant thereto.

Virtually all property in the possession of Douglas prior to February 12, 1953, was community property.

OPINION.

Petitioner claims a deduction under section 23 (a) (2), *supra*, in the amount of $15,175, consisting of $175 in accounting fees and $15,000 of a total payment of legal fees in the amount of $20,000. Respondent has allowed a deduction in the amount of $3,175, comprising the accounting fees and $3,000 of the legal fee claimed, and has disallowed the remaining $12,000 of legal expenses.

Respondent does not take issue with petitioner's allocation of $15,000 to the property settlement agreement and supplemental agreement respecting the stock options. Instead, he accepts that allocation and then goes further, assigning $3,000 to the periodic alimony provision, and the remaining $12,000 to all other phases of the settlement. He would then deny a deduction of any part of this $12,000 on two theories, first, that it was primarily a personal expense falling under section 24(a) (1), I.R.C. 1939,[3] and secondly, that it was a capital expenditure in the acquisition of title to property.

Petitioner argues:

*First*, the fees totaling $15,175 were paid for the production of taxable income to her (the periodic alimony),

*Second*, said fees were paid for the conservation of income-producing property, and

---
[3] SEC. 24. ITEMS NOT DEDUCTIBLE.

(a) * * * In computing net income no deduction shall in any case be allowed in respect of—

(1) Personal, living, or family expenses * * *

*Third*, said fees were not paid in obtaining or defending title to property.

1. Considering petitioner's first contention we see that respondent has allowed a deduction of $3,175 as the portion of the above fees allocable to the production of taxable income to petitioner in 1953. This is consistent in theory with the doctrine expressed in *Elsie B. Gale*, 13 T.C. 661, affd. 191 F. 2d 79 (C.A. 2) *Barbara B. LeMond*, 13 T.C. 670, and Regulations 111, section 29.24–1, as amended. Consequently we construe petitioner's first argument as a quarrel with the size of respondent's allowance.

Petitioner's periodic alimony was almost $24,000 in 1954 and for the 3 succeeding years it averaged about $24,400.

It is not feasible to place a monetary value on her right to continue to receive this alimony for it is geared to the size of Douglas' salary, retirement pay, or pensions which undoubtedly could vary drastically from year to year. Douglas' age is not shown in the record but since he and petitioner were married in 1916 he must be nearing retirement and we must assume, in the absence of a contrary showing, that his retirement pay or pensions will be less than his salary.

Assuming *arguendo* that the alimony payments will remain constant in size, we see that from 1954 through 1957 they have constituted about 30 per cent of petitioner's adjusted gross income and that virtually all of the remaining 70 per cent was derived from property received by her pursuant to the property settlement agreement.

Respondent has allowed only approximately 20 per cent of the $15,175 fees as deductible, but it is obvious that substantial portions of this total fee must be allocated to petitioner's receipt of properties and rights which produced no income in 1953 or in the years 1954 through 1957.

As set out in the findings, the residence, automobile, personal effects, cash value of life insurance, and cash totaled over $250,000 while income-producing property totaled about $626,000. Valuable rights received by petitioner and which produced no income during the above years include her right to share equally with Douglas should the stock options be reissued.

In the light of the above considerations we feel that respondent's allocation of $3,175 of the $15,175 fees as deductible was generous and we sustain such action.

2. Petitioner's first point dealt directly with the first portion of section 23(a)(2) concerning "the production or collection of income," and we have decided that $3,175 of the total fees of $15,175 is there deductible. Her second and third points therefore now apply to the remaining $12,000 of the fees and deal with her rights under the second portion of section 23(a)(2) concerning "the management,

conservation, or maintenance of property held for the production of income."

We shall first consider petitioner's third point that no part of such fees was paid in obtaining title to such property, for it is now established beyond the need for citations that amounts spent in acquisition of title are capital in nature and nondeductible.

Petitioner argues that she and Douglas were residents of California, a community property State, and that virtually all the property she received under the settlement agreement was community property as to which her interest and ownership had been present, existing and equal to that of her husband during coverture; that the purpose of the settlement was not to establish her title, which she already had, but to free her half of the property from Douglas' control.

Section 161a of the Civil Code of California, effective July 29, 1927, is as follows:

The respective interests of the husband and wife in community property during continuance of the marriage relation are present, existing and equal interests under the management and control of the husband as is provided in sections 172 and 172a of the Civil Code. This section shall be construed as defining the respective interests and rights of husband and wife in community property.

Prior to that provision, the wife's interest in community property had been, under California law, a mere expectancy. *Lahaney* v. *Lahaney*, 208 Cal. 323, 281 Pac. 67. Section 161a was not made retroactive, however, and the wife's interest in previously acquired community property is not thereby augmented. *Rogan* v. *Delaney*, 110 F. 2d 336 (C.A. 9), certiorari denied 311 U.S. 660. Hence, spouses married prior to July 29, 1927, may have two different classes of community property, (1) "old" property, in which the wife's interest is a mere expectancy, and (2) "new" property, in which her interest is fully vested. *Crocker First Nat. Bank* v. *United States*, 183 F. 2d 149 (C.A. 9).

Thus, petitioner had vested title in and to all "new" type community property, equal to and as complete as that of her husband, *Sidebotham* v. *Robison*, 216 F. 2d 816, 824–825 (C.A. 9); *Horton* v. *Horton*, 115 Cal. App. 2d 360, 252 P. 2d 397, 400, but she had a mere expectancy in community property acquired prior to July 29, 1927. To the extent she owned any part of such property or its equivalent after the agreements, she *acquired title*, and legal expenses allocable thereto must be held a nondeductible capital expenditure.

Respondent's determination is presumptively correct, and the burden is here upon petitioner to show the nature and extent of the income-producing community property in fact acquired subsequent to the enactment of the foregoing section 161a. *Crocker First Nat. Bank* v. *United States, supra.*

Neither party has directly offered evidence as to this matter, and to the extent petitioner has failed to prove post-July 29, 1927, acquisition of such property we must hold that allocation of requisite portion of the remaining $12,000 in fees is nondeductible.

3. Although what has been said above is dispositive of this entire case we dislike deciding such matters on burden of proof and, in addition, a careful examination of the entire record reveals that it could be inferred from the property schedule attached to the property settlement agreement that the following income-producing properties, transferred to petitioner, were acquired after July 29, 1927:

(a) $50,000 U.S. Treasury defense bonds "G",

(b) $350,000 face value U.S. Treasury Bills due February 13, 1953, value $348,362, and

(c) One-half of the oil royalty valued at $2,500.

We therefore proceed to petitioner's second point that said fees (or at least a requisite portion thereof) were paid for the conservation of income-producing property.

If we felt that petitioner's position were well taken it would be necessary for us to allocate portions of said fees to petitioner's acquisition of those properties and benefits which were patently non-income-producing such as the residence and household effects, the motor car, and Douglas' covenant to leave the residue of his estate, less $90,000 in specific bequests, to his and petitioner's children. Our holding, however, makes this matter moot.

It now seems well settled that the fees paid by a husband in resisting his wife's monetary demands incident to a divorce are not deductible under section 23(a)(2). *Tressler* v. *Commissioner*, 228 F. 2d 356, 361 (C.A. 9), affirming a Memorandum Opinion of this Court; *Smith's Estate* v. *Commissioner*, 208 F. 2d 349, 354 (C.A. 3), affirming a Memorandum Opinion of this Court on this issue; *Howard* v. *Commissioner*, 202 F. 2d 28, 29 (C.A. 9), affirming 16 T.C. 157; *Thorne Donnelley*, 16 T.C. 1196; and cf. *Andrew Jergens*, 17 T.C. 806, 810. The rationale of these cases is that property settlements and alimony, both lump sum and periodic, basically involve personal matters and personal obligations and that attendant expenses are therefore nondeductible.

We are still in accord with that view and can see no basis for distinguishing the instant case because it concerns a wife's claimed income-producing property whereas the cited cases concerned property of the husband. It is not thinkable, nor is it urged, that the title of a California wife in community property is in any way superior to the title of a husband, during coverture, in either a community property State or a common law State.

Examination of cases expressing a contrary doctrine reveals the following:

In *Baer* v. *Commissioner*, 196 F. 2d 646 (C.A. 8), reversing 16 T.C. 1418, petitioner owned the controlling stock interest of a large, downtown department store in St. Louis, Missouri, and as a consequence he served as its president at an annual salary of over $100,000. His wife's demands for lump-sum alimony threatened to break his control and thereby his position as president. In allowing deduction of his expenses in resisting her demands, the court stated that the controversy did not go to the question of his liability to his wife, but to the manner in which it might be met without disturbing his control. The court characterized this stock as having a peculiar and special value to Baer.

*Bowers* v. *Commissioner*, 243 F. 2d 904 (C.A. 6), reversing 25 T.C. 452, is quite similar. Petitioner owned the controlling stock interest of United States Register Company and served as its president at a salary of about $50,000 per year. The court followed the reasoning in *Baer* in allowing petitioner to deduct his expenses incurred in resisting his wife's claims.

In *McMurtry* v. *United States*, 132 F. Supp. 114 (Ct. Cl.), the husband (plaintiff) owned a large block of American Can Company stock (which his wife's demands threatened to break up) and served as one of its directors. After negotiation he was able to settle with his wife by giving her a reversionary interest in a trust which was non-income-producing to him, thereby retaining his position in American Can stock. The Court of Claims followed the reasoning in *Baer* in allowing deduction of plaintiff's expenses.

It is readily seen that these cases allowing deduction of expense under section 23(a)(2) as being conservatory of income-producing property all concern property having a peculiar and special value to the husband aside from its normal or intrinsic value. The opinions employ reasoning to the effect that the controversy (between husband and wife) did not go to the question of liability for alimony or even its amount, but solely or primarily to the manner in which it might be paid.

There is nothing in the instant case to bring it within the rationale of the above cases. The community property here had no peculiar or special value to petitioner aside from its normal or market value.

Petitioner urges the unreported case of *Aller* v. *United States*, (S.D., Cal., Aug. 20, 1956) as supporting her position, but that case involved claimed deduction of fees paid in 1952 for the purpose of reducing to writing an oral division of community property made in 1934. In 1952 there was no dispute of any kind between husband and wife and divorce was not contemplated. To state the facts is to show there is no parallel to the instant case.

We conclude, and hold, that that portion of the fees here being considered was expended for personal reasons and is nondeductible.

Since the above is dispositive of the entire case we will not consider respondent's further contention that the California court, in awarding the divorce, could have awarded up to all of the community property to either spouse.

*Decision will be entered for the respondent.*