Samuel E. Jacobs and Rosalie Jacobs (Husband and Wife) v. Commissioner.
Jacobs v. Commissioner
Docket No. 108681.
United States Tax Court
1943 Tax Ct. Memo LEXIS 361; 1 T.C.M. (CCH) 883; T.C.M. (RIA) 43171; April 13, 1943
*361 Harry Friedman, Esq., Munsey Bldg., Washington, D.C., for the petitioner. William G. Ruymann, Esq., for the respondent. DISNEY
Memorandum Findings of Fact and Opinion DISNEY, Judge: This proceeding involves a deficiency in income tax determined by the Commissioner for the year 1938 in the amount of $214.72. The questions for decision are whether the petitioners are entitled to deductions for the amount of certain legal expenses paid by Samuel E. Jacobs in the taxable year, and for a loss on certain stock owned by Samuel E. Jacobs, which the petitioners allege became worthless in the taxable year. The evidence consists of answers to written interrogatories and cross-interrogatories, and of testimony and an exhibit submitted at the hearing. Findings of Fact The petitioners are husband and wife, and are residents of New York, New York. Their joint income tax return for the taxable year was filed with the collector for the third district of New York. Samuel E. Jacobs, hereinafter referred to as the petitioner, is engaged in the real estate business in New York City. In 1938 he was the defendant in a suit for an accounting which had been instituted against him in his capacity as *362 trustee or executor of an estate. After trial, but before the entry of judgment, the action was settled upon stipulation of the parties, with the approval of the court. Under the terms of the stipulation, the petitioner became obligated to pay the sum of $36,500. If the suit had gone to judgment against him, his liability would have been in the amount of about $90,000; it would have constituted a personal liability, enforceable against his individual property. In connection with the litigation, and its settlement, he paid legal fees of $735 to Nathan Siegel, Jr., his attorney. The petitioner had never acted as trustee or executor of any estate other than that in regard to which the litigation arose. The complaining parties in the suit were relatives of the petitioner. Siegel, his attorney, was not. On January 24, 1927, Section Nineteen, Inc., was incorporated under the laws of the State of Florida, for the purpose of taking title to a tract of some 640 acres of undeveloped flat land known as Section 19, Township 41 South, Range 43 East, in Palm Beach County, Florida. At that time, Consolidated Realty Co. was seized of title to the property for the beneficial use of certain individuals *363 and corporations, subject to a mortgage which it had previously given to secure three notes in the respective amounts of $9,961, $9,961, and $9,962. The first two of the notes had then been paid, and the third fell due on May 15, 1927. On February 14, 1927, the title, subject to the mortgage, was conveyed to Section Nineteen, Inc., which issued all its stock, consisting of 100 shares to the persons and in the proportions for whose use Consolidated Realty Co. had stood seized. In 1928, the petitioner paid $2,860.85 to M. Morgenthau, Jr., a stockholder in Section Nineteen, Inc., on account of the purchase price of 4-8/9ths shares of the stock. In 1934 he made payment of $76.25 to the same individual, in satisfaction of the unpaid balance of the purchase price. Section Nineteen, Inc., having no assets other than the tract of land, was required to look to its stockholders, from time to time, for contributions of funds with which to meet its obligations. The petitioner, at some time or times subsequent to the acquisition of his stock, made a contribution of $15.61 toward taxes, and another of $97.32 toward interest owed by the corporation. The payments of these amounts were made by the *364 petitioner to Section Nineteen, Inc., and not directly to the mortgagee or tax collector. The principal of the mortgage note for $9,962 has never been paid. At different times during 1927 and 1928, various stockholders of Section Nineteen, Inc., requested the mortgagee to grant an extension of the maturity date. No interest has been paid since 1929. In 1935, the corporation was dissolved for failure to pay capital stock taxes. Thereafter it retained its corporate entity for the purpose of winding up its business, its directors becoming trustees of its assets for the benefit of the stockholders. The directors were Bert Winters, Alfred H. Wagg, and Harry F. Noble, the latter two of whom subsequently died, leaving Winters the sole surviving trustee. In 1938, Winters, pursuant to the directions of the stockholders, offered to convey the property of the corporation to Bessemer Properties, Inc., the then owner of the note and mortgage, in full satisfaction of the debt. The necessary deeds were prepared and tendered to the mortgagee in December of 1938, but were refused. A similar tender made in September of 1942 was also refused. The only consideration paid by Section Nineteen, Inc., *365 for the conveyance of the land to it in 1927 was in the issuance of its stock to the beneficial owners. In May of 1924, Consolidated Realty Co. had paid about $45,000 for the conveyance to it. In January of 1925, an undivided 3/5ths interest was sold for $96,000; in October of 1925, the same 3/5ths interest was purchased by some of the persons for whose use Consolidated Realty Co. stood seized for a price in excess of $96,000, the exact amount of which is not disclosed. On their return for the taxable year, the petitioner and his wife claimed a deduction of $735 on account of the legal expenses paid in connection with the accounting suit, and a deduction of $3,050.03 representing the initial cost of, and subsequent disbursements in connection with, the purchase of the 4-8/9ths shares of stock of Section Nineteen, Inc., the total amount being deducted because of "abandonment of real property." The respondent disallowed both deductions, made one other adjustment not here in issue, and determined the deficiencies. Opinion We consider first the question of the deductibility of the legal expenses incurred in connection with the accounting suit against the petitioner. There is no contention *366 that the expenses were incurred in connection with the petitioner's business, his reliance being placed entirely upon section 23 (a) (2) of the Internal Revenue Code, as added by section 121 (a) (2) of the Revenue Act of 1942, [1] which is expressly made retroactive in its effect. The petitioner testified that if judgment in the accounting suit had gone against him, it would have been enforceable against his individual property, and that his property is used to produce income. Upon brief, he argues that the "'management' and 'conservation' of property surely includes expenses of protecting that property from seizure under a money judgment," and concludes that the contested deduction is therefore allowable. We think no such broad construction may be placed upon section 23 (a) (2). The payment of the legal expenses certainly was not in connection with the management or maintenance of the petitioner's property, and only by applying the word in its broadest sense, may it be said to have any connection with its conservation. Such application would permit deduction by taxpayers of the expenses of any litigation which might result in money judgments against them, provided they held property *367 for the production of income. In our opinion, the legislation in question was designed primarily to afford relief from the hardships consequent upon the line of decisions culminating in Higgins v. Commissioner, 312 U.S. 212. To give it the effect here urged would be to impute to Congress an intention far more sweeping than any reasonable construction of its language will permit. Moreover, if the petitioner's testimony be construed to mean that all of his property is held for the production of income, and therefore within the language of the statute, the conclusion must be denied. On his return he claimed deduction of $1,274.21 for property taxes paid on his home, and reported receipt of salaries and other compensation for personal services of $6,120. Assuming, without deciding, that even if the statute could be construed to permit the deduction in any case where a money judgment would have to be collected, if at all, out of property held for the production of income, it may not be assumed in this case that the judgment creditors would have looked for satisfaction to petitioner's property of that classification, to the exclusion of his other property, *368 and of his earnings from salaries and compensation for personal services. We hold that the respondent's action in disallowing the deduction was proper. There remains only the question of petitioner's right to the loss deduction, claimed under section 23 (e) (2) of the Revenue Act of 1938, on account of the alleged worthlessness of his stock in Section Nineteen, Inc., due to abandonment of real estate, the only corporate asset. It is elementary that a loss deduction may be taken only in the year in which the loss is sustained - in this case, the year in which the stock in question became worthless in fact. The record is barren of any evidence from which it could be concluded that worthlessness *369 occurred in 1938. The only asset of the corporation was the 640-acre tract of land. What was its value, and did the value exceed corporate liabilities? The answers to these questions bear directly on the worth of the stock. They are not to be found, in the record, and we can not furnish them by guesswork. That the mortgage was long past due, that no interest had been paid for several years, and that the corporation had permitted its own dissolution in 1935 through failure to pay capital stock taxes are certainly indications of falling value, and would tend to support a conclusion that worthlessness occurred prior to the taxable year. On the other hand, the petitioner attempted to prove by his own testimony that there existed an equity for stockholders in 1938. He stated that he and certain of the other stockholders had intended to acquire the entire interest; but that a personal illness suffered in 1938 had forced him to give up the idea and consent to the abandonment of the property. If such equity did exist, then the stock had not yet become worthless. We can not agree with the petitioner that his own illness and consequent chanrge of plans could make it otherwise. If the property *370 had value, petitioner's illness was immaterial; and a tender of a deed, because of such illness, negatives rather than proves worthlessness. We think such tender establishes no "identifiable event" to show worthlessness. In our opinion, the petitioner has not overcome the presumption of the correctness of respondent's determination that the stock did not become worthless in 1938. We find no error in the denial of the claimed loss deduction. Decision will be entered for the respondent. Footnotes
1. SEC. 121. NON-TRADE OR NON-BUSINESS DEDUCTIONS. (a) Deduction for Expenses. - Section 23 (a) (relating to deduction for expenses) is amended to read as follows: "(a) Expenses. - * * * * *
"(2) Non-Trade or Non-Business Expenses. - In the case of an individual, all the ordinary and necessary expenses paid or incurred during the taxable year for the production or collection of income, or for the management, conservation, or maintenance of property held for the production of income."↩