**Gertrude Hochschild SERGIEVSKY, Plaintiff,**

**v.**

**John McNAMARA and Rea Forhan Pedrick, as Administratrix of the Estate of William J. Pedrick, Deceased, Defendants.**

United States District Court
S. D. New York.
Oct. 14, 1955.

234

Sullivan & Cromwell, New York City, for plaintiff. John F. Dooling, Jr., Edwin M. Zimmerman, New York City, of counsel.

Lloyd F. MacMahon, U. S. Atty., for the S. D. of New York, New York City, for defendants. Arthur S. Ecker, Asst. U. S. Atty., New York City, of counsel.

HERLANDS, District Judge.

Plaintiff moves for summary judgment, Rule 56 of the Federal Rules of Civil Procedure, 28 U.S.C.A.; defendants cross-move for summary judgment. The facts are stipulated. The only issue is purely one of law.

The action is by plaintiff-taxpayer for a refund of portions of the income taxes paid for the calendar years 1940 and 1941. The subject-matter of the action consists of certain legal expenses, totalling $18,125, incurred and paid by plaintiff in 1940 and 1941. The Bureau of Internal Revenue disallowed these expenditures as deductible on the ground that they were capital expenses and, therefore, not deductible under the controlling statute, Internal Revenue Code of 1939, § 23(a) (2), 26 U.S.C.A. § 23 (a) (2).

A consideration of the history and nature of the litigation, in connection with which plaintiff paid the legal expenses, is necessary in order to determine the true character of those expenses and hence their deductibility.

On January 24, 1928, Berthold Hochschild died. Part of his estate included 6,698 shares of the common capital stock of Climax Molybdenum Company (hereinafter called "Climax"). In that same year, his daughter, Gertrude, plaintiff herein, received 2,232⅔ Climax shares under her father's will. This represented one-third of her father's Climax stockholdings. Gertrude and her two brothers, Harold and Walter, each received one-third of their father's Climax stock.

About ten years later, on December 31, 1938, one Alfred Turner instituted a stockholders' derivative action on behalf of The American Metal Company (hereinafter called "American"). Plaintiff's father had been an officer and director of American. He and other persons connected with American had entered into certain stock arrangements with Climax whereby they eventually obtained Climax stock. Turner claimed, *inter alia,* that such Climax stock had been obtained personally by plaintiff's father and other American personnel in breach of their fiduciary duty to American whereby American was unlawfully deprived of the corporate opportunity to acquire such Climax stock.

Shortly after the Turner action was begun, another stockholder (Gutwillig) commenced a similar action. The two stockholders' actions were consolidated in 1939; and the consolidated actions are referred to in this opinion as the "Turner action."

At the time that the Turner action was instituted, the Estate of Berthold Hochschild had been entirely distributed.

In the Turner action, forty-two persons were named as defendants. Among the defendants was Gertrude, plaintiff herein. She was named as a defendant solely in her capacity as a co-executor of the last will and testament of her father. She had never held office in or been employed by either Climax or American. Gertrude's two brothers were also named as defendants. Harold was named as a defendant both individually and as a co-executor. Walter was named solely in his capacity as a co-executor. The three executors of the Hochschild Estate appeared in the action on January 14, 1939.

The relief sought in the Turner action was (1) to impose a constructive trust on the Climax stock held by defendants; (2) to obtain an accounting by defendants for damages and for benefits received by defendants, or, in the case of defendants joined in a representative capacity, by their decedent; and (3) to obtain an accounting of the value of any Climax shares which defendants had held but were unable to transfer to American because of sale or other disposition of such shares.

In defending the litigation, the legal expenses were shared among certain of the defendants, including Berthold Hochschild's estate. Such expenses were shared in proportion to the amount of Climax stock that had been issued to such defendants (including Berthold Hochschild) on April 1, 1918. The total expenses allocated to Berthold Hochschild's estate were thus determined. Since the Hochschild Estate had been fully distributed prior to the commencement of the Turner case, and since each of the three Hochschild children had received one-third of their father's Climax stock, Gertrude's share of the legal expenses was one-third of the total legal expenses allocated to the Hochschild Estate. This amounted to $5,625 in 1940 and $12,500 in 1941, paid out of Gertrude's personal funds.

After a trial in the Supreme Court of the State of New York, County of New York, Turner v. American Metal Co., 36 N.Y.S.2d 356, and an appeal to the Appellate Division of that court, 268 App. Div. 239, 50 N.Y.S.2d 800, the complaint in the Turner case was dismissed on the merits. All defendants were exonerated from liability. The Turner litigation terminated in 1945.

The parties agree that one fundamental question is presented for the Court's determination:

May the legal expenses incurred by plaintiff be deducted as "ordinary and necessary expenses paid or incurred during the taxable year for the production or collection of income, or for the management, conservation, or maintenance of property held for the production of income", under § 23(a) (2) of the Internal Revenue Code of 1939?

Plaintiff claims that the legal expenses incurred and paid by her were ordinary and necessary expenses incurred in connection with the management, conservation, or maintenance of income-pro-

ducing property and were, therefore, deductible. Defendants claim that the expenses were a capital cost, because they were incurred in "defending or perfecting title to property" within the meaning of Reg. 111, § 29.24–2, and were, therefore, non-deductible.

In their argument, defendants analyze plaintiff's position in the Turner action in the light of her representative status as a co-executor of her father's estate and then in the light of her personal status as a legatee. First, defendants argue that, if plaintiff be viewed as a representative of her father's estate, she may not personally claim the benefit of legal expenses that were incurred by her in her capacity as an executor; that such expenses could be deducted only by the estate; and that such expenses related to estate property as distinguished from personally owned, individual property. Secondly, defendants argue that, if plaintiff be viewed in her personal status as a legatee, the expenses were incurred as a capital cost to perfect and defend her title to the Climax stock.

The Court regards defendants' arguments as untenable. The authorities [1] relied upon by defendants in support of their first argument relate to situations where the estate had not been fully distributed. In the case at bar, plaintiff had received the Climax stock about ten years *before* the commencement of the Turner action, and the Hochschild Estate had been fully distributed before the Turner litigation began. Thus, for about ten years, plaintiff's Climax stock was income-producing property solely for her individual benefit. She received over $1,600,000 in taxable dividend income from that stock during the years 1933 to 1945. Viewed realistically, plaintiff's defense of the Turner action and her personal payment of her share of the legal expenses incident to the defense of that lawsuit, represented action to preserve income-producing property that she owned personally.[2]

Defendants' second argument—that the legal expenses herein were incurred to defend and perfect plaintiff's title to the Climax stock and were, therefore, to be treated as a capital cost item—is not supported by the judicial decisions interpreting § 23(a) (2) of the Internal Revenue Code of 1939. That section provides that the claimed expense be incurred in connection with the management, conservation, or maintenance of property held for the production of income. Property held for the production of income includes realty, stocks, and bonds.[3]

■ Legal expenses are not deductible under § 23(a) (2) merely because they are paid for legal services which relieve a taxpayer of liability. But where the expenses are reasonable in amount and bear a substantial and proximate relation to the management of property held for the production of income, they are deductible. Thus, in Trust of Bingham v. Commissioner,[4] the Supreme Court held that legal expenses were deductible under § 23(a) (2) where they were incurred by a trustee in contesting an income tax deficiency assessed by the Commissioner, in obtaining advice in

1. Samuel E. Jacobs v. Commissioner, 1943, 1 T.C.M. 883; Frederic A. Seidler, 1952, 18 T.C. 256.

2. If plaintiff be deemed to occupy her deceased father's position, as defendants argue, it would follow as a matter of logic that she was being sued for an alleged breach of fiduciary duty with respect to stock held prior to its distribution to her as a legatee. Under such circumstances, her possible claim of a business deduction (under § 23[a] [1]) would parallel that which her brother asserted and justified in Hochschild v. Commissioner, infra, note 13.

3. Connelly v. Commissioner, 1946, 6 T.C. 744 [attorney's fees in connection with litigation involving income tax deficiency held deductible from gross income, although taxpayer was unsuccessful in contesting the deficiency]; Cammack v. Commissioner, 1945, 5 T.C. 467 [successful deficiency defense held deductible under § 23(a) (2)].

4. Trust of Bingham v. Commissioner, 1945, 325 U.S. 365, 65 S.Ct. 1232, 89 L.Ed. 1670.

connection with the payment of a cash legacy, and in formally distributing the trust corpus among legatees. The Court reasoned that such outlays represented expenses for the management of property held for the production of income, even though the trust had terminated prior thereto. The Court, in holding that it is not necessary for the expense to result in the actual collection of income, said:

> "Section 23(a) (2) * * * permits deductions of management expenses * * * even though the particular expense was not an expense directly producing income." [5]

The Court made it clear that the purpose of the then newly-added subsection, 23(a) (2),[6] was to place individuals with a non-business income on an equal footing with those possessing a business income, so far as deductions were concerned.[7]

In general, the cost of the legal defense of title to property is a capital expenditure.[8] In the category of capital expenses are legal fees paid to quiet or perfect title to land,[9] to defend an action to invalidate a sale of stock,[10]

and to defend a statutory proceeding for the perpetuation of testimony with regard to a claim for property.[11]

However, the "line of demarcation between an 'ordinary and necessary expense' as a deductible item and an expenditure incurred in defense of title to property and therefore not deductible is extremely narrow. In fact, in some of the cases it appears to have been drawn on an arbitrary rather than on a basis of reason or logic." [12] Where the defense of title aspect of the litigation is of secondary importance and the primary purpose of the litigation otherwise qualifies the expense for deduction under § 23(a) (2), the total expense will be treated as deductible.[13] For example, it has been held not to constitute defense of title to defend an action for an accounting of partnership property.[14] However, where the action squarely involves the issue of legal title to specific property, the costs of the litigation cannot be deducted as an expense. While the general rule with reference to the defense of title has been criticized,[15] there is no reason for treating such expenses differently merely because they are as-

5. Ibid., 325 U.S. at page 374, 65 S.Ct. at page 1237.

6. See Report of the House Ways and Means Committee, H.R.No.2333, 77th Congress, 1st Sess. Section 23(a) (2), enacted in 1942, but retroactive to 1939, was partly induced by the decision in Higgins v. Commissioner, 1941, 312 U.S. 212, 61 S.Ct. 475, 85 L.Ed. 783.

7. The *pari materia* rule of the Bingham decision has suggested the rather frequent analysis of first ascertaining whether an expense would be deductible had it resulted from a business transaction. If so, it is then held that the expense is deductible as a nonbusiness expenditure, inasmuch as all other requirements are substantially identical in construing §§ .23 (a) (1) and 23(a) (2). The Supreme Court itself used this analysis in the Bingham case.

8. Bowers v. Lumpkin, 4 Cir., 1944, 140 F. 2d 927, 151 A.L.R. 1336, certiorari denied 1944, 322 U.S. 755, 64 S.Ct. 1266, 88 L.Ed. 1585; Falls v. Commissioner, 1946, 7 T.C. 66.

9. Jones' Estate v. Commissioner, 5 Cir., 1942, 127 F.2d 231; Louisiana Land & Exploration Co. v. Commissioner, 5 Cir., 1947, 161 F.2d 842; Porter Royalty Pool, Inc., v. Commissioner, 6 Cir., 1948, 165 F.2d 933, certiorari denied, 1948, 334 U.S. 833, 68 S.Ct. 1347, 92 L.Ed. 1760.

10. Bowers v. Lumpkin, supra, note 8.

11. Coughlin v. Commissioner, 1944, 3 T.C. 420.

12. Rassenfoss v. Commissioner, 7 Cir., 1946, 158 F.2d 764, at page 766, reversing, 1945, 4 T.C.M. 1004.

13. Hochschild v. Commissioner, 2 Cir., 1947, 161 F.2d 817, reversing, 1946, 7 T.C. 81; Rassenfoss v. Commissioner, ibid.

14. Rassenfoss v. Commissioner, ibid.

15. In view of the fact that, in producing income and in managing income-producing property, many of the usual expenses resemble and possess some of the attributes of capital charges.

sociated with nonbusiness income as distinguished from business income.[16]

In the present case, the Court's decision is strongly indicated by the holdings and the reasoning of Hochschild v. Commissioner [17] and Rassenfoss v. Commissioner.[18] The Hochschild case establishes that the fundamental purpose of the Turner stockholders' derivative action was not to adjudicate the title to the Climax stock, but to impress a constructive trust upon that stock in order to facilitate an accounting for profits and damages. In that case, the Court of Appeals for the Second Circuit declared:

> "We cannot agree that these fees which the petitioner paid in defense of the lawsuit were any the less deductible because his liability, if proved, might have destroyed his equitable title to the stock he held. His right to keep it was certainly in issue and in that sense his title to it was defended, to be sure, but the title as such was not perfected in any way by his expenditures for legal assistance. He thereby but fended off an abortive attack upon the conduct of his business as a fiduciary and by freeing himself from liability to his corporation to account for such conduct put all of his property beyond the reach of his then accusers." [19]

In the Rassenfoos case, the Court of Appeals for the Seventh Circuit said:

> "Laying aside the legal question as to whether petitioner had any title to the partnership assets, it is perfectly plain, so we think, that the main and primary purpose of the suit which petitioner defended was for an accounting and any question of title was merely incidental thereto.[20]

The mere fact that the plaintiff's Climax shares may have been affected by the Turner action, did not mean that the legal expenditures by plaintiff were directly for the defense of title. Otherwise, every expenditure to conserve income-producing property would be a capital expenditure, thereby emasculating a part of § 23(a) (2). That statute explicitly permits acts to conserve property without necessarily treating such expenses as items of capital cost. Such expenses as were involved in plaintiff's beating off an ill-founded suit did not add to or enhance her property. In deciding such questions, the courts, as Judge Learned Hand has said, do not substitute "juristic metaphysics" and and "theoretic analysis" for more conventional and accepted notions.[21]

Had plaintiff's father been alive to defend the Turner action, he would have been in a position to rely directly upon the Hochschild decision to establish the propriety of the deduction now claimed by plaintiff. The fortuitous circumstance that it was plaintiff and not her father who defended the Turner action—which circumstance precludes her from asserting the business deduction provisions of § 23(a) (1) and instead remits her to the non-business deduction provisions of § 23(a) (2)—should not bar the application of the principles established by the Hochschild case. The decision in the Bingham case establishes conclusively that the two subsections of § 23(a) are to be interpreted in pari materia.

In our view of the matter, plaintiff may properly claim that her legal expenses in the Turner action were deductible under § 23(a) (2). The issue of title to plaintiff's Climax stock may not be said to have been "main and primary." It was but the "incidental" legal offshoot of an attempt to compel plaintiff to account for some of the profits she received from stock held for the production of income. Therefore, it is concluded that plaintiff incurred ordinary and

---

16. Trust of Bingham v. Commissioner, supra, note 4.

17. Supra, note 13.

18. Supra, note 12.

19. Supra, note 17, 161 F.2d at page 819.

20. Supra, note 14, 158 F.2d at page 767.

21. Commissioner of Internal Revenue v. Field, 2 Cir., 1930, 42 F.2d 820, 823.

necessary expenses[22] for the collection of income or for the management, conservation, or maintenance of property (her Climax stock) held for the production of income.

Plaintiff's motion for summary judgment is granted. Defendants' cross-motion for summary judgment is denied.

---

22.   See Kornhauser v. United States, 1928, 276 U.S. 145, 48 S.Ct. 219, 72 L.Ed. 505.