Joseph LEWIS, Petitioner-Appellant,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.

No. 77, Docket 24520.

United States Court of Appeals
Second Circuit.

Argued Dec. 11, 12, 1957.

Decided April 7, 1958.

Lumbard, Circuit Judge, dissented in part.

Paul Arnold, Richard Z. Steinhaus, New York City, for petitioner-appellant.

Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson, I. Henry Kutz, J. Dwight Evans, Jr., Attys., Dept. of Justice, Washington, D. C., for respondent-appellee.

Before MEDINA, LUMBARD and WATERMAN, Circuit Judges.

WATERMAN, Circuit Judge.

The taxpayer appeals from a decision of the Tax Court, 27 T.C. 158, sustaining the disallowance by the respondent of certain deductions claimed by the taxpayer in his income tax returns for the years 1947, 1948 and 1949. Each of the disallowed deductions was for expense incurred by the taxpayer in connection with litigation stemming from marital discord between him and his wife. The principal problem raised on this appeal is the recurring one of ascertaining whether a taxpayer's expenses are deductible from gross income under Section 23(a) of the Internal Revenue Code of 1939, 26 U.S.C. § 23(a),[1] or whether they are personal

---

1. Section 23(a) provides:

"§ 23. Deductions from gross income. In computing net income there shall be allowed as deductions:

"(a) Expenses.

"(1) Trade or business expenses.

"(A) In general. All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including a reasonable allowance for salaries or other compensation for personal services actually ren--

expenses which, under Section 24(a) (1)[2] are not so deductible.

The taxpayer, Joseph Lewis, at all times relevant herein, was the sole stockholder of three publishing companies, Eugenics Publishing Co., Personal Books, Inc., and Free Thought Press Association. In addition, he is the author of several controversial books and pamphlets of which about 500,000 copies have been sold. Among the books written by Mr. Lewis are "Thomas Paine, Author of the Declaration of Independence," "The Bible Unmasked," "Atheism," "The Ten Commandments," and "The Tyranny of God." On January 29, 1947 the taxpayer was arraigned in the Magistrate's Court of the City of New York upon a complaint filed by his wife charging that he was dangerously insane and seeking his commitment to a mental institution. Whether by coincidence or otherwise, January 29 was also the publication date of "Thomas Paine, Author of the Declaration of Independence." At the hearing before the Magistrate's Court petitioner was ordered to submit to examination by psychiatrists either at Bellevue Hospital or at a private sanatorium. He chose the latter in the belief that the publicity which would result from his admission to Bellevue for mental observation would have an adverse effect upon the sale of his books. Approximately one month later Mrs. Lewis withdrew her complaint in the Magistrate's Court; and then, in May 1947, commenced a proceeding in the Supreme Court of the State of New York to have taxpayer declared mentally incompetent. She requested that the court appoint her the committee over the petitioner's person and that she "and a banking corporation, or each, or both, be appointed a Committee over his property." Eventually, the court dismissed the proceeding and declared taxpayer competent to manage and control his property, but meanwhile taxpayer had expended $11,-950.00 in defending himself against his wife's charges.[3]

In March 1947, subsequent to the dismissal of the commitment proceeding in the Magistrate's Court but prior to the commencement of the incompetency proceeding in the Supreme Court, Lewis revoked an *inter vivos* trust which he had created in 1931 for the benefit of his wife and others. In view of the questions which had been raised concerning the taxpayer's competency, the trustee of this trust demanded and obtained a judicial settlement of its account as trustee. The trustee, in connection with this proceeding, incurred legal expenses of $3,500 which Lewis was ordered to pay.

In October 1947 the litigious Mrs. Lewis, who was not living with taxpayer, instituted an action for legal separation. At the outset the taxpayer indicated that he did not contest his wife's right to a separation, but, through his attorneys, he vigorously contested the financial demands which she made. Among these demands were requests that she be awarded fifty per cent of the stock of Eugenics Publishing Company and fifty

---

dered; traveling expenses (including the entire amount expended for meals and lodging) while away from home in the pursuit of a trade or business; and rentals or other payments required to be made as a condition to the continued use or possession, for purposes of the trade or business, of property to which the taxpayer has not taken or is not taking title or in which he has no equity.

\* \* \* \* \*

"(2) Non-trade or non-business expenses. In the case of an individual, all the ordinary and necessary expenses paid or incurred during the taxable year for the production or collection of income, or for the management, conservation, or maintenance of property held for the production of income."

2. Section 23(a) (1) provides:
   "§ 24. Items not deductible
   "(a) General rule. In computing net income no deduction shall in any case be allowed in respect of—
   "(1) Personal, living, or family expenses, except extraordinary medical expenses deductible under section 23(x);
   \* \* \*."

3. This figure represents the following fees:
   Attorneys' fees ............ $6,250
   Psychiatrists' fees .......... 2,200
   Special Guardian's fee ...... 3,500

per cent of various securities which she claimed were held in brokerage accounts in her name and that of taxpayer jointly. The Tax Court found that "a major portion of the services rendered by petitioner's counsel in connection with this action [for legal separation] related to the form and amount of the maintenance and support provisions to be made for petitioner's wife and to the adjustment of their respective property rights."

Lastly, in January 1948, by a verified complaint Mrs. Lewis commenced an action against taxpayer for an accounting. She again alleged that she was the joint owner with the taxpayer of various securities purchased from brokerage firms and that she was the sole owner of certain government bonds that taxpayer had secreted from her. In addition, she claimed ownership of one half of the stock of the Eugenics Publishing Company and she alleged Lewis had appropriated this stock to himself. She sought recovery of these securities and interest and dividends thereon. The answer denied the material allegations of the complaint.

In November 1948 the taxpayer and his wife effected a settlement of all the litigation then pending between them. Under this agreement, which was incorporated in a judgment of the New York Supreme Court, petitioner's wife acknowledged his ownership of all of the Eugenics stock, released him from her claims to certain securities, agreed to consent to the accounting filed in connection with the revocation of the 1931 trust, and agreed to discontinue her own accounting action. In return, the taxpayer agreed, *inter alia,* to establish a trust fund, the income from which was payable to Mrs. Lewis for life, and to pay her attorneys a fee of $10,000. This $10,000 was paid in 1948. The petitioner also paid legal fees in excess of $15,000 to the law firm which had represented him in the separation action and in the two accounting proceedings.

In his income tax returns for the years 1947, 1948 and 1949 the petitioner claimed as deductions from gross income the expenses which had been incurred by him in connection with the above-detailed litigation in which he had been involved. Upon disallowance of the deductions by the Commissioner, the taxpayer filed a petition in the Tax Court to set aside the deficiencies assessed. From an adverse decision there, this appeal was taken.

## I

The taxpayer urges alternative grounds in support of his contention that the respondent erred by disallowing as deductions the expenses incurred in connection with the incompetency proceedings against him. He contends first that the expenses were incurred by him in pursuit of his trade as an author, and hence that they are deductible under Section 23(a)(1). In support of this contention the taxpayer points out that the publicity attendant upon an adjudication of mental incompetency would have been extremely detrimental to the sale of his books, particularly in view of the concededly controversial nature of these writings. Relying upon Commissioner of Internal Revenue v. Heininger, 1943, 320 U.S. 467, 64 S.Ct. 249, 88 L.Ed. 171; Draper v. Commissioner, 1956, 26 T.C. 201; Salt v. Commissioner, 1952, 18 T.C. 182, and Howard v. Commissioner, 1951, 16 T.C. 157, affirmed on other grounds, 9 Cir., 1953, 202 F.2d 28, the petitioner urges that expenses incurred to protect a trade or business from threatened destruction are deductible as "ordinary and necessary" business expenses, and that his expenses were of such a character. The Tax Court rejected this argument. It characterized these expenditures as "personal," because it found that the petitioner's primary purpose in contesting the incompetency proceedings was to maintain his freedom rather than to protect his business. The cases relied upon by the taxpayer were distinguished by the Tax Court on the ground that in each of them the taxpayer's dominant motive was to protect his business. Though we are in accord with the conclusion of the Tax Court we follow a somewhat different path, for we cannot agree that the peculiar personality characteristics of a

taxpayer are determinative of his tax liability. That one taxpayer prizes his personal liberty more than his property, while another values property more highly, seems to us irrelevant to the allowance or disallowance of a claimed deduction.

Not every expenditure can be claimed as a deduction, and this is so whatever may be the effect of the expenditure upon the profit-seeking activities of the taxpayer. See Bonney v. Commissioner, 2 Cir., 1957, 247 F.2d 237. Determination of the deductibility of an item of expense surely depends upon the activity in connection with which the item was expended and to which it relates, Lykes v. United States, 1952, 343 U.S. 118, 72 S.Ct. 585, 96 L.Ed. 791; yet, when the activity has been determined, one must then determine the nature of that activity in order to discover if the item may be deducted. "For income tax purposes * * * [A]n individual * * * is not regarded as a business automaton whose functions consist solely of profit-seeking activities. The income tax regards him as also a human being incurring expenditures that are not related to business or other gainful activity." Surrey and Warren, Federal Income Taxation 247 (1955). In broad outline, Section 23(a) provides that insofar as an individual taxpayer engages in a profit-seeking activity, he may deduct from gross income the expenses incurred in that activity, limited only by the requirement that the expenses be both "ordinary and necessary"; but, insofar as expenditures are incurred by a taxpayer in furtherance of an activity personal in nature, Section 24(a)(1) prohibits deduction from gross income.[4] Since, however, a specific expenditure will often be capable of characterization under the language of either Section 23(a) or Section 24(a)(1), the problem in each case is to determine which section is the applicable one. As Justice Cardozo said in considering a similar

problem, "One struggles in vain for any verbal formula that will supply a ready touchstone." Welch v. Helvering, 1933, 290 U.S. 111, 115, 54 S.Ct. 8, 78 L.Ed. 212.

Taxpayer relies upon four decisions in favor of taxpayers made upon facts he considers analogous to his fact-situation. We find all of them inapplicable.

In Commissioner of Internal Revenue v. Heininger, supra, [320 U.S. 467, 64 S.Ct. 252] the taxpayer, a dentist, conducted a mail order business for the sale of dentures. The Postmaster General, finding that advertisements sent by the taxpayer through the mail were false and misleading, issued an order forbidding delivery of mail to the taxpayer and forbidding the payment of postal money orders drawn to his order. In resisting enforcement of the order of the Postmaster General the taxpayer incurred legal expenses. The Supreme Court held these expenditures were deductible as "ordinary and necessary" business expenses. Since the proceedings against the taxpayer were concerned only with the business which he conducted, it is clear that the legal expenses were incurred as a result of "carrying on" that business. The expenditures were made in defending a direct attack upon the profit-seeking activities of the taxpayer. The same is true of Howard v. Commissioner, supra, which involved the deductibility of legal expenses incurred by an army officer in defending himself before a court-martial. The charges against him, though they had their origin in a marital dispute, were directed to his status as a commissioned officer. Cf. Salt v. Commissioner, supra. The very issue before the tribunal was whether Howard should lose that status and its income concomitants.

In the present case, by contrast, the charge that the taxpayer was incompetent was not directed at destroying his trade or business, but was directed at the totality that is the individual, Lewis.

---

4. With the exception of personal expenses the deductibility of which is expressly provided for in the statute. See, e. g., § 23(b), § 23(o) and § 23(x).

Among the decisions relied upon by the taxpayer the closest analogy is provided by Draper v. Commissioner, supra. There the Tax Court allowed the taxpayer, an entertainer whose livelihood was threatened by charges that he was a Communist, a deduction for expenses incurred by him in the prosecution of a libel action. Though we agree with the petitioner that Draper v. Commissioner to some extent supports his position, we decline to accept that Tax Court decision as controlling authority, for we believe that it is in conflict with prior decisions of this and other courts.[5] Bonney v. Commissioner, supra; Lloyd v. Commissioner, 7 Cir., 1932, 55 F.2d 842. In each of these cases a deduction was denied for expenses incurred in an attempt to prevent someone from making defamatory statements which were alleged to be adversely affecting the business of the taxpayer. As the court stated in Lloyd, " * * * when the slanderous words spoken are about the reputation of an individual, such individual himself is the one who suffers the injury." 55 F.2d 842, 844. The effect upon the individual's trade or business, harmful though it may be, is merely incidental to the harm which he otherwise suffers. Similarly, in the present case, the expenses incurred by the petitioner were to defend himself against charges directed toward him as a person. Detrimental to his trade the charges may have been; yet they were not, as in Heininger, Howard and Salt, directed to his occupational activities as such. See Hinkle v. Commissioner, 1942, 47 B.T.A. 670. We conclude that the expenses incurred by taxpayer in connection with the incompetency proceedings were personal expenses, the deduction of which is expressly prohibited by Section 24(a)(1).

Since Section 24(a)(1) cuts across Section 23(a), it is clear that taxpayer's alternative contention, that the expenses were deductible under Section 23(a)(2) as expenditures for the "conservation, or maintenance of property" must fail also.

## II

We also conclude that the Tax Court properly sustained the disallowance by the Commissioner of the deduction claimed by petitioner for expenses incurred in the proceeding brought by his wife for a legal separation. The petitioner does not dispute that fees paid by a husband in resisting his wife's monetary demands incident to a divorce or legal separation proceeding are generally not deductible. Smith's Estate v. Commissioner, 3 Cir., 1953, 208 F.2d 349; Howard v. Commissioner, supra. He relies, however, upon an exception to this rule created in Baer v. Commissioner, 8 Cir., 1952, 196 F.2d 646, and applied in two other cases, Bowers v. Commissioner, 6 Cir., 1957, 243 F.2d 904, and McMurtry v. United States, 1955, 132 F.Supp. 114, 132 Ct.Cl. 418. In Baer the legal expenses sought to be deducted were incurred in connection with an uncontested divorce proceeding in which the sole issue was the form and amount of alimony to be paid to the taxpayer's wife. The property of the taxpayer consisted mainly of stock in a corporation of which he was president and which provided him with the chief source of his income. The financial demands made by the wife were such that the taxpayer would have been unable to meet them without altering his interest in the corporation. The court held that under these circumstances the legal expenses were incurred for "the purpose of conserving and maintaining this income-producing property," 196 F.2d 646, 651. With all deference, we cannot reconcile this decision with that of the Supreme Court in Lykes v. United States, supra; hence we decline to follow

---

5. Moreover, the rationale underlying the Draper opinion is that the taxpayer's primary motive in commencing the libel action was his concern for the effect of the charges upon his occupational profit-seeking activity. As we have indicated above, the taxpayer's motivation is not, in our opinion, relevant to the issue of characterizing an item of expense as deductible; or as personal, and hence non-deductible.

it.[6] In Lykes, as in Baer, the deduction was sought under Section 23(a)(2). The taxpayer had incurred legal expenses in contesting a gift tax deficiency of $150,-000 assessed by the Commissioner. The Supreme Court, holding that the legal expenses were not deductible, stated that

"Legal expenses do not become deductible merely because they are paid for services which relieve a taxpayer of liability. That argument would carry us too far. It would mean that the expense of defending almost any claim would be deductible by a taxpayer on the ground that such defense was made to help him keep clear of liens whatever income-producing property he might have." 343 U.S. 118, 125, 72 S.Ct. 585, 589, 96 L.Ed. 791. Cf. Hunter v. United States, 2 Cir., 1955, 219 F.2d 69.

Moreover, the Supreme Court held that a deduction is not allowable merely because of the particular circumstances of the taxpayer.

"While the threatened deficiency assessment of nearly $150,000 added urgency to petitioner's resistance of it, neither its size nor its urgency determined its character. * * * If, as suggested, the relative size of each claim, in proportion to the income-producing resources of a defendant, were to be a touchstone of the deductibility of the expense of resisting the claim, substantial uncertainty and inequity would inhere in the rule." 343 U.S. 118, 125, 126, 72 S.Ct. 585, 589.

### III

■ ■ Two additional deductions claimed by the taxpayer—for legal fees incurred in defense of the accounting action brought by Mrs. Lewis and for legal fees incurred in the settlement of the proceeding initiated by the trustee upon revocation of the *inter vivos* trust—were disallowed by the Tax Court on the ground that these expenditures were capital in nature and hence not deductible as "expense." In her accounting action, as we have noted previously, Mrs. Lewis sought to establish her title to certain securities held by the taxpayer, thus casting upon the taxpayer the necessity of defending his ownership of them. The taxpayer now urges that the expenses incurred by him in defending his title are deductible under Section 23(a)(2). In support of this argument he urges that a distinction must be drawn between expenditures incurred in perfecting title to property, which taxpayer apparently concedes to be non-deductible; and expenses incurred in defending title. This distinction is untenable under the authorities. Levitt & Sons v. Nunan, 2 Cir., 1944, 142 F.2d 795; Bowers v. Lumpkin, 4 Cir., 1944, 140 F.2d 927, 151 A.L.R. 1336; Croker v. Burnet, 1933, 61 App.D.C. 342, 62 F.2d 991. Whether the suit is to perfect or to defend title the expenses are a capital item rather than an income deduction. The cases relied upon by petitioner, Hochschild v. Commissioner, 2 Cir., 1947, 161 F.2d 817; Rassenfoss v. Commissioner, 7 Cir., 1946, 158 F.2d 764, and Sergievsky v. McNamara, D.C.S.D.N.Y.1955, 135 F.Supp. 233, are readily distinguishable. In Rassenfoss, 158 F.2d 764, at page 767, the court stated " * * * that the main and primary purpose of the suit which petitioner defendant was for an accounting and any question of title was merely incidental thereto." In Sergievsky v. McNamara, 135 F.Supp. 233, at page 238, following Rassenfoss and Hochschild, the court stated, with reference to Hochschild, that the "fundamental purpose of the * * * action was not to adjudicate the title to the Climax stock, but to impress a constructive trust upon that stock in order to facilitate an accounting for profits and damages." In the present case, on the other hand, though the form of the action was for an accounting, the Tax Court found that its primary purpose was to determine the title to the

---

6. Judge Lumbard would limit this discussion to distinguishing Baer v. Commissioner on its facts.

securities. This finding is amply supported by the record. We conclude that the deduction claimed by petitioner for this item of expense was properly disallowed.

 We sustain also the disallowance by the Tax Court of the deduction claimed for expenses incurred by the petitioner in connection with the litigation over the revocation of the *inter vivos* trust. Though the record before us is not wholly clear, the proceeding commenced by the trustee appears to have been initiated not only for the purpose of obtaining a judicial settlement of the trust account but also to determine whether the petitioner had capacity to revoke the trust and hence to revest title in himself. Expenses incurred to acquire title to property are capital in nature and are not deductible under Section 23 (a)(2). See Garrett v. Crenshaw, 4 Cir., 1952, 196 F.2d 185.[7]

## IV

 The contention of the petitioner that he is entitled to a deduction for the payment by him of such of his wife's legal expenses as he agreed to pay is also without merit. Cf. Magruder v. Supplee, 1942, 316 U.S. 394, 62 S.Ct. 1162, 86 L.Ed. 1555.

## V

We conclude that the deductions claimed by petitioner were properly disallowed, as each represented an expenditure which was either personal or capital in nature. Accordingly, the decision of the Tax Court is affirmed.

LUMBARD, Circuit Judge (concurring in part and dissenting in part).

I concur with Judge WATERMAN'S opinion except insofar as it disallows the expenses incurred by the petitioner in the judicial settlement of the trustee's account in the *inter vivos* trust. As to these expenses I agree with Judge Rice's dissenting opinion in the Tax Court, 27 T.C. 158, that the expenses did not arise from a dispute as to title and therefore they are deductible.

---

7. It may be appropriate to add that we are not in accord with that portion of the Tax Court's opinion which denies this deduction on the ground that the expenditures were personal. The Tax Court supported this ground of decision by its finding that the revocation of the trust "was motivated principally, if not solely, by the difficulty he was having with his wife." The finding, though amply supported by the record, is irrelevant to the issues raised. See footnote 5.