Monroe GUTTMANN and Loretta Guttmann

v.

UNITED STATES of America.

Monroe GUTTMANN, Elizabeth Wolfers and Alexander Guttmann, Trustees of Trust for Rose Guttmann, et al., and Elizabeth Wolfers, Monroe Guttmann and Alexander Guttmann, Trustees of Trust for Elizabeth Wolfers et al.

v.

UNITED STATES of America.

Civ. A. Nos. 17037, 17318.

United States District Court
W. D. Pennsylvania.

Feb. 24, 1960.

Leonard Levenson, Pittsburgh, Pa., for plaintiffs.

Hubert Teitelbaum, U. S. Atty., Pittsburgh, Pa., for the United States.

WALLACE S. GOURLEY, Chief Judge.

1. a. Plaintiffs at Civil Action No. 17037, Monroe Guttmann and Loretta Guttmann, his wife, residents of Allegheny County, Pennsylvania, filed a joint income tax return for the year 1955, with the District Director of Internal Revenue at Pittsburgh, Pennsylvania, on April 12, 1956, reporting a tax liability of $19,724.69, and paid that amount.

b. In computing their taxable income, they deducted the sum of $12,645, being their cost of settling certain litigation, hereinafter called the Pittsburgh Terminal litigation, in which they were named as respondents.

c. The deduction of $12,645 was disallowed by the District Director, and, pursuant to such disallowance, an additional tax of $7,585.63, with interest, was assessed against plaintiffs.

d. Plaintiffs, on January 17, 1958, paid to the District Director of Internal Revenue at Pittsburgh, Pennsylvania, the sum of $7,887.19 in payment of such deficiency of $7,585.63, plus interest thereon in the sum of $301.56 to the date of payment.

e. Plaintiffs, on March 7, 1958, filed with the District Director a claim for refund of $7,887.19 plus interest from the date of payment. A true copy of the claim for refund is attached as an exhibit to the complaint.

f. On June 24, 1958, the District Director disallowed the claim for refund and no part of said sum of $7,887.19, plus interest from the date of payment, has been refunded to plaintiffs.

g. The present suit for refund by plaintiffs at Civil Action No. 17037 was filed on June 2, 1958.

h. Plaintiffs also deducted in their 1955 return the sum of $606.30 for legal and travel expense paid in connection with their defense of the Pittsburgh Terminal litigation.

i. The foregoing deduction of $606.30 was disallowed by the Internal Revenue Service and as a result thereof an additional assessment of $357.71 in tax and $65.97 in interest, totalling $423.68, was made against plaintiffs on May 12, 1959, which assessment has not been paid. A counterclaim for the additional assessment of $423.68 was duly authorized and filed in the present suit by defendant.

(Oral stipulation of counsel)

2. a. Plaintiffs at Civil Action No. 17318, trustees of trusts for Rose Guttmann et al. and for Elizabeth Wolfers et al. filed their 1955 fiduciary income tax returns with the District Director of Internal Revenue at Pittsburgh, Pennsylvania on April 18, 1956, reporting tax liabilities of $356.55 and $363.84, respectively, and paid those amounts.

b. In computing their taxable incomes, plaintiff trusts each deducted the sum of $6,772.50, being their cost of settling the Pittsburgh Terminal litigation, in which they were also named as respondents.

c. The deductions of $6,772.50 were disallowed by the District Director, and, pursuant to such disallowances, an additional tax of $1,792.24 with interest was assessed against the Rose Guttmann trust, and an additional tax of $1,797.34 with interest was assessed against the Elizabeth Wolfers trust.

d. On January 17, 1958, the Rose Guttmann trust paid to the District Director of Internal Revenue at Pittsburgh, Pennsylvania, the sum of $1,978.24 in payment of such deficiency of $1,792.24, plus interest thereon in the sum of $186 to the date of payment, and the Elizabeth Wolfers trust paid $1,983.87 in payment of such deficiency of $1,797.34, plus interest thereon in

the sum of $186.53 to the date of payment.

e. On March 7, 1958 claims for refund were filed with the District Director for $1,978.24 by the Rose Guttmann trust and $1,983.87 by the Elizabeth Wolfers trust, plus interest from the date of payment. True copies of the claims for refund are attached as exhibits to the complaint.

f. On June 24, 1958, the District Director disallowed the claims for refund and no part of said sums of $1,978.-24 and $1,983.87 plus interest from the date of payment, has been refunded to plaintiff trusts.

g. The present suit for refund by the plaintiff trusts was filed on September 23, 1958.

(Oral stipulation of counsel)

3. The Pittsburgh Terminal litigation was instituted in this court in November, 1951, by petitions, also referred to as Phase II and Phase III, respectively, of the Securities and Exchange Commission and of the trustee of the debtor filed in proceedings at No. 20716, commenced in December, 1939, for the reorganization of Pittsburgh Terminal Coal Corporation, debtor, under Chapter X of the Bankruptcy Act, 11 U.S.C.A. § 501 et seq. (Plaintiffs' Ex. 1 and 3; Docket entries at No. 20716)

4. The basic and central purpose of the Pittsburgh Terminal litigation was to obtain in behalf of the non-respondent or "public" shareholders of Pittsburgh Terminal Realization Corporation (Realization) from the individual and trust plaintiffs here and other respondents an accounting and recovery of profits on certain purchases of stock of the debtor and of its successor, Realization, made during periods when respondents and/or their relatives or associates were allegedly in a fiduciary relationship, and to obtain from Monroe Guttmann an accounting and recovery of profits on certain coal mining ventures and salary payments received while he was an employee of Realization allegedly in violation of the debtor's plan of reorganization. (Plain-

tiffs Exhibits 1 and 3; Transcript of record of trial of Phases II and III at No. 20716)

5. Some of the Realization shares held by the respondents in the Pittsburgh Terminal litigation were received as part of a distribution in exchange for shares of the debtor's preferred stock and represented part of the profits made on purchases of the debtor's preferred stock for which an accounting and recovery was sought, and the inclusion in the prayers for relief of the Pittsburgh Terminal petitions of a demand that a constructive trust be impressed on those Realization shares was for the purpose of facilitating an accounting for profits on the debtor's preferred stock rather than for the purpose of adjudicating the title to the Realization shares. (Plaintiffs' Exhibits 1, 2, 3, 4 and 10; Transcript of record of trial of Phases II and III at No. 20716)

6. All other prayers for relief in the Pittsburgh Terminal litigation were ancillary to the basic purposes of recovery of profits on stock purchases, profits on coal mining venture and salary payments, and were either abandoned prior to or at the trial or were rendered moot by the compromise settlement. (Plaintiffs' Exhibits 1, 3, 5, 6, 7, 8 and 9; Transcript of record of trial of Phases II and III at No. 20716)

7. After almost three years of continuous litigation, involving numerous preliminary motions and petitions and pretrial discovery involving thousands of pages of depositions and thousands of interrogatories and requests to admit by both sides, the actual trial of the Pittsburgh Terminal litigation was commenced before Hon. Wallace S. Gourley, Chief Judge, on October 4, 1954. The trial continued almost daily until the spring of 1955, when settlement negotiations were commenced, culminating in an agreement of compromise and settlement dated May 23, 1955, which was approved by the court on June 15, 1955. (Plaintiffs' Exhibits 5, 6, 7, 8 and 9. Docket entries and transcript of record of trial of Phases II and III at No. 20716)

8. The settlement agreement required that the respondents, including the plaintiffs here, pay to all of the non-respondent shareholders the sum of $40 in exchange for each share of Realization held by them. (Plaintiffs' Exhibits 5, 6, 7, 8 and 9)

9. The fair value of the Realization shares at the time of the consummation of the settlement did not exceed $25 per share. (Oral stipulation of counsel at trial)

10. Pursuant to the settlement agreement, plaintiffs Monroe and Loretta Guttmann paid the sum of $33,720 and received therefor 843 shares of Realization having a fair value of $21,075. The excess of $12,645 over fair value represented their cost of settlement.

(Oral stipulation of counsel)

11. Pursuant to the settlement agreement, each of the plaintiff trusts paid the sum of $18,060 and received therefor 451½ shares of Realization. The excess of $6,772.50 over fair value represented the cost of settlement to each trust. (Testimony of Monroe Guttmann)

12. The settlement agreement was approved by the court with an express finding that none of the respondents by agreeing thereto admitted any breach of fiduciary duty or wrongdoing whatsoever. (Transcript of hearing on June 2, 1955 at No. 20716)

13. The settlement agreement was largely induced as a result of the realization by the respondents of the fact, which was brought to the attention of the parties by the trial judge, that a final adjudication of the numerous and complex issues of fact and law involved in the Pittsburgh Terminal litigation would probably require several more years of litigation, including appeals, and would involve tens of thousands of dollars of additional expense for legal fees, transcripts, and other costs. (Transcripts of hearings on March 2, 1955 and June 2, 1955 at No. 20716)

14. The cost of settlement of $12,645 to plaintiffs, Monroe and Loretta Guttmann, and of $6,772.50 to each of plaintiff trusts represented and was in lieu of additional litigation expense in defending the Pittsburgh Terminal litigation. (Transcripts of hearings on March 2, 1955 and June 2, 1955 at No. 20716)

15. The legal and travel expense of $606.30 paid by Monroe Guttmann in 1955 constituted necessary and proper expenses in connection with the defense of the Pittsburgh Terminal litigation.

Conclusions of Law

1. The court has jurisdiction of the parties and of the subject matter.

2. Of the sum of $40 paid pursuant to the Pittsburgh Terminal settlement agreement by the plaintiffs here in exchange for each share of Pittsburgh Terminal Realization Corporation stock held by non-respondent shareholders, the allocation of $25 to cost of the share and $15 to expense of settling the litigation was properly made and proved.

Lomas & Nettleton Co. v. United States, D.C., 79 F.Supp. 886; Pressed Steel Car Co., Inc. v. Commissioner, 20 T.C. 198, CCH Dec. 19,616; Ziegler v. Commissioner, 5 T.C. 150.

3. Plaintiffs, Monroe and Loretta Guttmann properly deducted their cost of settlement of $12,645 and legal expense of $606.30 in connection with the Pittsburgh Terminal litigation as ordinary and necessary expenses paid for the production or collection of income under Section 212, Internal Revenue Code of 1954 (26 U.S.C. § 212); and, as to profits on coal mining ventures, alternatively as a loss incurred in a trade or business. Section 165(c) (1), Internal Revenue Code of 1954 (26 U.S.C. § 165(c) (1).

Hochschild v. Commissioner, 2 Cir., 161 F.2d 817; Sergievsky v. McNamara, D.C., 135 F.Supp. 233; Beer v. United States, D.C., 132 F.Supp. 282; James E. Caldwell & Co. v. Commissioner, 6 Cir., 234 F.2d 660; Butler v. Commissioner, 17 T.C. 675; Lomas & Nettleton Co. v. United States, D.C., 79 F.Supp. 886; Ziegler v. Commissioner, 5 T.C. 150.

4. Each of plaintiff trusts for Rose Guttmann et al. and for Elizabeth Wolf-

ers et al. properly deducted its cost of settlement of $6,772.50 in connection with the Pittsburgh Terminal litigation as an ordinary and necessary expense paid for the production or collection of income under Section 212 Internal Revenue Code of 1954 (26 U.S.C. § 212).

Hochschild v. Commissioner, 2 Cir., 161 F.2d 817; Sergievsky v. McNamara, D.C., 135 F.Supp. 233; Beer v. United States, D.C., 132 F.Supp. 282; James E. Caldwell & Co. v. Commissioner, 6 Cir., 234 F.2d 660; Butler v. Commissioner, 17 T.C. 675; Lomas & Nettleton Co. v. United States, D.C., 79 F.Supp. 886; Ziegler v. Commissioner, 5 T.C. 150.

5. None of the issues in the Pittsburgh Terminal litigation were of such nature as to require the disallowance as a deduction of the cost of settlement in order to prevent the frustration of public policy.

Hochschild v. Commissioner, 6 Cir., 161 F.2d 817; Sergievsky v. McNamara, D.C., 135 F.Supp. 233; Butler v. Commissioner, 17 T.C. 675; James E. Caldwell & Co. v. Commissioner, 6 Cir., 234 F.2d 660.

6. Plaintiffs in Civil Action No. 17037, Monroe and Loretta Guttmann, are entitled to judgment in their favor and against the United States of America in the amount of $7,887.19, with interest from January 17, 1958, as provided by law, and to judgment in their favor and against the United States of America on the counterclaim of the United States of America.

7. Plaintiff trust for Rose Guttmann et al., in Civil Action No. 17318, is entitled to judgment in its favor and against the United States of America in the amount of $1,978.24 with interest from January 17, 1958 as provided by law.

8. Plaintiff trust for Elizabeth Wolfers et al., in Civil Action No. 17318, is entitled to judgment in its favor and against the United States of America in the amount of $1,983.87 with interest from January 17, 1958 as provided by law.