HERBERT E. COX AND JUDITH K. COX, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Cox v. Commissioner
Docket No. 3308-79
United States Tax Court
T.C. Memo 1981-552; 1981 Tax Ct. Memo LEXIS 192; 42 T.C.M. (CCH) 1229; T.C.M. (RIA) 81552; September 28, 1981. Herbert E. Cox. pro se. David W. Otto, for the respondent. HALL MEMORANDUM FINDINGS OF FACT AND OPINION HALL, Judge: Respondent determined a $ 626 deficiency in petitioners' 1977 income tax. The issue for decision is whether petitioners are entitled to a business deduction for a legal fee paid in connection with their personal bankruptcies. [1]
FINDINGS OF FACT Herbert E. and Judith K. Cox, husband and wife, resided in Glendale, Arizona, when they filed their petition. Herbert earned $ 15,300 and $ 16,500 in 1976 and 1977, respectively, as a tool and planning specialist for Honeywell Information Systems, Inc.
In February 1976 Judith opened a western wear retail store in Phoenix under the name of "Gene's Western Wear and Tack" ("Gene's Western Wear"). Prior to opening Gene's Western Wear, Judith had no retail experience. *194 [2] The business never operated successfully and by early 1977 petitioners realized that they would have to close Gene's Western Wear. In January 1977 petitioners contacted Lynn M. Pearlstein, a Phoenix attorney, for advice on their financial situation. Pearlstein advised petitioners that the business debts of Gene's Western Wear were exorbitant and that Herbert's salary would be inadequate to pay these debts. Pearlstein further advised petitioners to file individual bankruptcy petitions under the Bankruptcy Act in the United States District Court for the District of Arizona (the "Bankruptcy Court"). In January 1977 petitioners paid Pearlstein $ 5,000 for services rendered or to be rendered in connection with their bankruptcies. On January 31, 1977, Pearlstein caused a Declaration of Homestead to be filed on petitioners' behalf with the Maricopa County Recorder. On March 3, 1977, each petitioner, with the aid of Pearlstein, filed a Debtor's Petition with the Bankruptcy Court. The bulk of Pearlstein's activities prior to March 1977 involved the preparation of the Debtor's *195 Petitions. [3]Pearlstein continued to represent petitioners in the bankruptcy proceedings at least through December 1977. Herbert's and Judith's bankruptcy petitions were the same and listed total debts of $ 163,819.77, $ 159,822.77 of which were attributable to 99 creditors of Gene's Western Wear. [4] Petitioners listed total assets of $ 55,275 as follows: (1) their equity in their home estimated at $ 45,000; (2) $ 75 of cash; (3) stock in trade valued at $ 5,000; (4) household goods, furniture and wearing apparel valued at $ 5,000; and (5) $ 200 in a checking account. Each petition also claimed a $ 5,000 exemption pursuant to Ariz. Rev. Stat. §§ 33-1123, 33-1124, 33-1125, 33-1126 and 33-1131 (1976), for household furniture, furnishings, appliances, food, fuel, personal items and salary. *196 The Bankruptcy Court appointed a trustee and an attorney for the trustee in connection with petitioners' combined bankruptcy proceedings. In May 1977 Pearlstein, on behalf of petitioners, filed an objection to the trustee's report of exempt property, adding to the exempt property an amount of $ 15,000 for petitioners' homestead exemption. In November 1977, the trustee questioned the reasonableness of the $ 5,000 fee paid to Pearlstein. Pursuant to a court order dated December 5, 1977, Pearlstein placed $ 3,500 in a bank certificate of deposit in the joint names of the trustee and his law firm pending determination of the reasonableness of the fee. In January 1978, the Bankruptcy Court determined that the fee paid to Pearlstein in January 1977 was intended to be for services rendered prior to the filing of the bankruptcy petitions, and that $ 1,500 represented a reasonable fee. Accordingly, the court ordered Pearlstein to endorse the certificate of deposit over to the trustee. On August 21, 1978, the trustee filed his final account and report indicating that he had completely liquidated and distributed all of petitioners' assets. Petitioners received $ 15,000 from the trustee *197 as their homestead exemption and retained $ 5,000 of exempt personal property. On their 1977 joint return petitioners deducted $ 5,000 as a business expense for the legal fee paid to Pearlstein for his services in connection with the bankruptcies. In his notice of deficiency respondent disallowed the entire deduction. In their petition, petitioners disagreed with the entire disallowance and asserted an overpayment of $ 707. At trial petitioners conceded that the proper amount of the legal fee should be $ 1,500. ULTIMATE FINDING OF FACT Petitioners' bankruptcies were proximately caused by their inability to pay the debts of Gene's Western Wear. OPINION The issue for decision is whether petitioners are entitled to deduct the $ 1,500 paid to Lynn M. Pearlstein for legal services rendered in connection with their personal bankruptcies. Respondent contends that the expenses of petitioners' bankruptcies were personal, living or family expenses which are nondeductible under section 262. [5] Alternatively, respondent contends that the fee had both personal and business purposes, that petitioners failed to establish a basis for allocating the fee between these purposes, and *198 thus petitioners are not entitled to a deduction for any portion of the fee. Petitioners assert that the legal fee was wholly business related and therefore deductible. We agree with respondent's alternative contention that the fee had dual characteristics, but, unlike respondent, we conclude that a reasonable allocation of the business portion of the fee can be made. Section 162(a) allows a deduction for all ordinary and necessary expenses paid or incurred during the year in carrying on a trade or business. Section 262 disallows deductions for personal, living or family expenses. To determine whether an expense is a deductible trade or business expense as opposed to a nondeductible personal, living or family expense, we must look to the origin and character of the expense. United States v. Gilmore, 372 U.S. 39, 49 (1963). In Gilmore, 5a the Supreme Court addressed the question of whether a taxpayer-husband could deduct that portion of his legal expenses *199 incurred in divorce proceedings which was attributable to his former wife's claim to certain of his assets, namely, his controlling stock interests in three corporations. The Court of Claims, the Courts of Appeals and the Tax Court [6] had reached conflicting results producing two standards against which the deductibility of such an expense was determined. One test looked to the consequences that might result from a taxpayer's failure to defeat the claim. The other test looked to the origin and nature of the expense. In rejecting the former test and adopting the latter, the Supreme Court stated (at 48-49): *200 The principle * * * is that the characterization, as "business" or "personal," of the litigation costs of resisting a claim depends on whether or not the claim arises in connection with the taxpayer's profit-seeking activities. It does not depend on the consequences that might result to a taxpayer's income-producing property from a failure to defeat the claim * * *. For these reasons, we resolve the conflict among the lower courts on the question before us * * * in favor of the view that the origin and character of the claim with respect to which an expense was incurred, rather than its potential consequences upon the fortunes of the taxpayer, is the controlling basic test of whether the expense was "business" or "personal" and hence whether it is deductible or not under § 23(a)(2). We find the reasoning underlying the cases taking the "consequences" view unpersuasive. The Court concluded that the origin of the legal expenses in Gilmore was the taxpayer's marriage and divorce, not his investments. In Dowd v. Commissioner, 68 T.C. 294, 303-304 (1977), we relied on the origin and character of the claim test in deciding whether certain expenses *201 of a bankrupt taxpayer were deductible under section 162(a). The cash-basis taxpayer in Dowd filed a voluntary petition in bankruptcy in 1963 resulting primarily from his inability to pay for over $ 400,000 of business-related purchases. In 1969 the taxpayer incurred court costs and litigation expenses in connextion with the resolution of a dispute with the creditors of his bankruptcy estate whereby the taxpayer agreed to pay to each creditor an amount equal to 15 percent of his claim from assets outside the bankruptcy estate. In exchange, the creditors agreed not to oppose the taxpayer's discharge in bankruptcy and waived all claims against him. We held that these court costs and litigation expenses were deductible to the extent the creditors' claims arose out of the ordinary course of the taxpayer's 1963 business. In the case before us, we conclude that petitioners' bankruptcy was proximately caused by the failure of their retail business. At the time they filed their bankruptcy petitions, petitioners had business assets of $ 5,000 (stock in trade) and personal (or nonbusiness) assets of approximately $ 50,000. Petitioners' debts, on the other hand, totaled $ 163,819.77, *202 $ 159,822.77 of which were attributable to business creditors. Not only were petitioners' debts almost entirely business-related, their total assets were also far less than their business liabilities. Based on these facts, we find that petitioners filed their bankruptcy petitions as a proximate result of their inability to pay their business debts. [7] Respondent all but concedes this point, stating: *203 The facts of the case are clear that it was the commercial failure of the petitioners' retail sales business which pushed them into insolvency and the brink of bankruptcy. Since we have found that petitioners' bankruptcies were caused by the failure of their business, it follows from Dowd that at least a portion of the fee paid in connection with filing their bankruptcy petitions has its origin in petitioners' business. In Dowd, the deductible portion of the expense was that part of the expense which bore the same ratio to the entire expense as the claims of the taxpayer's business creditors bore to the total claims of all the taxpayer's creditors. [8] Using the same standard, we hold that petitioners are entitled to deduct an amount which bears the same ratio to the $ 1,500 paid to Pearlstein as the claims of their business creditors ($ 159,822.77) bear to the total claims of all their creditors ($ 163,819.77). [9]
*204 Respondent agrees that the outcome of this case should turn on the application of the origin and character of the claim test, but respondent contends that the origin and character of the legal fee are personal. Respondent correctly identifies the dual purposes behind the enactment of the Bankruptcy Act as: (1) giving the debtor a fresh start in his future endeavors, unhampered by the pressure and discouragement of preexisting debts; and (2) providing for the equitable distribution of the bankrupt's assets among his creditors. See Lines v. Frederick, 400 U.S. 18, 19 (1970); Girardier v. Webster College, 563 F. 2d 1267, 1274 (8th Cir. 1977). Respondent also correctly points out that the bankruptcy proceedings, by virtue of Arizona law, protected $ 5,000 of petitioners' personal property and $ 15,000 of their home equity. Respondent then asserts that the origin and character of the fee paid to Pearlstein lie in the fresh start and protection of petitioners' exempt property, that these factors are inherently personal, and therefore no portion of the fee is deductible. While it is true that the fresh start afforded petitioners and the protection *205 of their exempted property are personal benefits, we find that they are consequences of petitioners' bankruptcies rather than the origin or cause of the bankruptcies. In fact, they are consequences of the type of the Supreme Court in Gilmore held could not be used to determine whether an expense is business or personal in nature. [10] These consequences do not control the deductibility of the attorney's fee incurred by petitioners in filing their bankruptcy petitions. Respondent's position is also weakened by his inability to point to any factor other than the failure of petitioners' business as the proximate cause for the expense in question. Decision will be entered under Rule 155. Footnotes
1. Petitioners claim they are entitled to a $ 707 refund. Petitioners introduced no evidence on this issue and therefore we assume they have abandoned it. Moreover, since the burden of proof is on petitioners, Rule 142(a), Tax Court Rules of Practice and Procedure↩, they have failed to carry their burden.
2. The record is unclear, but apparently Gene's Western Wear was operated as a sole proprietorship.↩
3. Based on Pearlstein's description of his work, he spent a total of 28.3 hours on petitioners' cases prior to March 3, 1977. Pearlstein's schedule reveals that he spent a portion of 2.3 hours on February 21, 1977, researching exemptions. In addition, Pearlstein must have spent a small amount of time in January preparing the Declaration of Homestead.↩
4. Taxes owing to the United States and the State of Arizona accounted for the $ 3,997 balance.↩
5. All statutory references are to the Internal Revenue Code of 1954, as in effect during the years in issue.↩
5a. In United States v. Gilmore, 372 U.S. 39 (1963), the Supreme Court dealt with a claimed deduction under the predecessor to section 212. The test established in Gilmore is also applicable to section 162(a) because the relevant portions of those two provisions should be read inparimateria. Id↩. at 45. 6. Compare Lewis v. Commissioner, 253 F.2d 821 (2d Cir. 1958), and Douglas v. Commissioner, 33 T.C. 349 (1959), with Gilmore v. United States, 154 Ct.Cl. 365, 290 F.2d 942 (1961), revd. 372 U.S. 39 (1963), and Baer v. Commissioner, 196 F.2d 646↩ (8th Cir. 1952).
7. This finding distinguishes this case from Artstein v. Commissioner, T.C. Memo. 1970-220 (1970). In that case the taxpayer claimed a $ 900 deduction for attorney's fees incurred in connection with the filing of a personal petition in bankruptcy. In disallowing the deduction, we stated: There is no showing that the bankruptcy petition was in any way connected with any trade or business of petitioner. We recognize that this petition was filed because of a judgment obtained against petitioner in connection with a transaction which originated because of circumstances connected with petitioner's business activities. However, in our view, this record is insufficient to show the proximate relationship of the filing of the bankruptcy petition to petitioner's trade or business necessary to support the deductibility of the attorneys' fees as a trade or business expense or an expense in connection with a transaction entered into for profit.↩
8. The use of this ratio is premised on first finding a proximate causal relationship between the taxpayer's business and his bankruptcy. Absent such a finding no part of the expense is deductible. Artstein v. Commissioner, supra↩, note 7. This is so even though the taxpayer has numerous business creditors whose claims are affected by the discharge in bankruptcy. 9. Petitioners introduced no evidence indicating the source of their tax obligations to the United States and the State of Arizona. Since petitioners bear the burden of proof, Rule 142(a), Tax Court Rules of Practice and Procedure↩, we find that no portion of the taxes are attributable to their business.
10. In United States v. Gilmore, supra↩, the Supreme Court confronted a situation where the consequences of an expense benefited a taxpayer's business but the origin of the expense was personal. In the present case we have the reciprocal arrangement: the consequences are primarily personal, but the origin and character is business. We see no reason for departing from the Supreme Court's rule that the origin and character of the expense controls.